WILLIAM JENKS *v.* JANE JENKS
(12017)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued December 6, 1993—decision released May 24, 1994

---

*Charles F. Brower,* for the appellant (plaintiff).

*Steven H. Levy,* for the appellee (defendant).

O'CONNELL, J. The plaintiff appeals challenging the opening of the judgment in this dissolution of marriage action, as well as the postjudgment allowance of attorney's fees to the defendant to defend this appeal and a finding that he was in contempt of court.

Initially, the plaintiff claims that (1) there was no legal basis for opening the judgment and (2) the trial court improperly allowed an expert to give an opinion. In two amended appeals, the plaintiff claims additionally that the trial court improperly (1) evaluated the respective financial positions of the parties in granting the allowance to the defendant to defend the appeal, (2) considered whether the plaintiff was justified in taking the appeal in granting the allowance to defend, and (3) found the plaintiff in contempt of court for failure to commence alimony payments on a specific date. We affirm in part and reverse in part.

On February 13, 1991, the plaintiff commenced this action seeking a dissolution of the parties' marriage. In August, 1991, the parties participated in a media-

tion session and in September, 1991, they participated in a pretrial conference, which resulted in an agreement that was never consummated. On November 27, 1991, the parties again appeared for a pretrial conference, and continued negotiations that culminated in a signed written stipulation. The same day, the stipulation was submitted to and approved by the trial court, *Dranginis, J.,* which ordered the stipulation incorporated into the dissolution decree.

On December 10, 1991, the defendant wrote to Judge Dranginis expressing dissatisfaction with the judgment and stating, inter alia, that "I should have gone for the battered woman angle, it might have worked more in my favor."

On January 9, 1992, the defendant, through new counsel, filed a motion to open the judgment alleging that she was a "long term emotionally battered spouse who was on medication for stress and anxiety," that she had "entered into the Stipulation under extreme emotional duress caused by both the long term emotional abuse by the plaintiff as well as the circumstances of negotiations in the courthouse," and that the stipulation was entered into as a result of "undue influence and the defendant was unable to make a meaningful decision." Following an evidentiary hearing, the trial court, *Susco, J.,* granted the motion and, in a memorandum of decision filed April 24, 1992, stated that "[g]iven the history of ultimatums without explanation which preceded the pretrial and the plaintiff's own behavior as it relates to the defendant, the court finds that the agreement was the product of duress. The court does find that the claim of undue influence is not supported by the evidence in that the plaintiff himself did not attempt to exert influence over the defendant during the months preceding November, 1991." After the opening, the case was reheard before the trial court, *Pickett, J.,* which modified the orders of the stipulated

judgment. Thereafter, Judge Pickett granted the defendant's motion for attorney's fees to defend the appeal and subsequently granted her motion for contempt. Those latter orders are the subject of part II of this opinion.

Additional facts necessary for disposition of the appeal are set forth in the course of our analysis.

## I

### ORIGINAL APPEAL

The plaintiff first claims that the trial court, *Susco, J.,* abused its discretion in opening the original dissolution judgment. We commence our analysis with the observation that this judgment was rendered as a result of a written stipulation. Although such a judgment is in effect a contract between the parties rather than an adjudication on the merits, it is just as conclusive as if it had been rendered after a full trial on controverted facts. *Gillis* v. *Gillis,* 214 Conn. 336, 339, 572 A.2d 323 (1990); *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980); *Brian* v. *Reynolds,* 143 Conn. 456, 460–61, 123 A.2d 192 (1956). It is firmly established in Connecticut, however, that opening a contractually based judgment is different from opening a judgment following a fully litigated case. A contractually based judgment may be opened only if the trial court finds fraud, duress, accident or mistake. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 558, 468 A.2d 1230 (1983); *Celanese Fiber* v. *Pic Yarns, Inc.,* 184 Conn. 461, 466, 440 A.2d 159 (1981).

Of these four possible grounds for opening a contractual judgment, the trial court relied on duress in the present case. The classical or common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." 25 Am. Jur. 2d,

Duress and Undue Influence § 1 (1966). Inherent in the term is an implication of feebleness on one side and overpowering strength on the other. *United States* v. *Bethlehem Steel Corp.*, 315 U.S. 289, 300, 62 S. Ct. 581, 86 L. Ed. 853 (1941). The duress must be imposed on the defendant at or about the time the defendant enters into the contract. 25 Am. Jur. 2d, Duress and Undue Influence § 14 (1966); see *Shlensky* v. *Shlensky*, 369 Ill. 179, 183, 15 N.E.2d 694 (1938).

Common law or classical duress was narrowly construed and required acts that were sufficient to overcome the mind and will of a person of ordinary firmness. "However, there has been a gradual relaxation of these rules and under the modern doctrine of duress, the pressure applied does not have to be such as to overcome the will . . . of a [person] of ordinary firmness but is sufficient if it in fact overcomes the will of the person against whom it is applied. In other words, any wrongful act or threat which actually compels the victim to act against his will constitutes duress." 25 Am. Jur. 2d, Duress and Undue Influence § 3 (1966). Under the modern rule we look to the effect of the wrongful acts on a particular person rather than to the hypothetical effect on a person of ordinary firmness.

The evidence in the present case showed that there was little or no contact between the parties for more than a month prior to the dissolution. On November 27, 1991, the parties arrived at court separately and remained in different areas of the courthouse while their attorneys acted as intermediaries. Only when the agreement was ready for final review and execution did the parties come together. This meeting was in the presence of both attorneys in the jury assembly room where each placidly reviewed the agreement. There is no evidence of any duress remotely contemporaneous with the execution of the agreement.

The defendant contends that the law no longer requires that the defendant's acts be approximately contemporaneous with the execution of the agreement. She contends that no nexus is required between the plaintiff's acts of misconduct and the execution of a contract. The defendant relies on *McCarthy* v. *Taniska,* 84 Conn. 377, 80 A. 84 (1911), for this proposition. We agree that *McCarthy* describes duress as being the effect on the mind of a party that makes it impossible for him or her to exercise his or her own free will. We find nothing in *McCarthy,* however, that supports the defendant's position that a nexus to the contract's execution is not required. To the contrary, the alleged bad acts in *McCarthy* were directly related in time to the contract's execution. In fact, the plaintiff cites and quotes *McCarthy* as part of his definition of duress.

Underlying the defendant's argument is her claim that she suffered from battered spouse syndrome, which is a recently recognized diagnosis of the condition that results from a person's living in a situation in which he or she is constantly abused verbally, criticized, abused sexually and beaten. Such conditions promote great anxiety and usually dependence.[1] As such, the defendant argues that duress at any time during the marriage that affected her power to exercise her free will would be sufficient to warrant opening the judgment. This argument, if accepted, would drastically discourage the settlement of dissolution cases by agreement. Under this theory, it would be possible for either party to come back to court and demand the opening of a judgment for the reason that at any time prior to the dissolution there had been duress so that when the agreement was signed, the complaining party was still acting under the influence of that duress. Such a situ-

---

[1] Our disposition of this appeal does not require that we express an opinion on the validity of the battered spouse syndrome as a theory of action or defense.

ation would be untenable. We must rely on the wisdom and skill of family session judges to canvass the parties to determine voluntariness. We are not willing to destroy our policy of encouraging negotiated settlements.

The memorandum of the trial court, *Susco, J.*, is somewhat internally contradictory because after the finding that the agreement was the product of duress, the court also found that "the claim of undue influence is not supported by the evidence in that Mr. Jenks himself did not attempt to exert influence over Ms. Jenks during the months preceding November, 1991. See *Pickman* v. *Pickman*, 6 Conn. App. 271, 275, 505 A.2d 4 (1986)." The trial court was apparently drawing a distinction between duress and undue influence.

Because of their similarities, the concepts of duress and undue influence are often discussed in conjunction with each other. See 25 Am. Jur. 2d, Duress and Undue Influence §§ 1 through 49 (1966). Although distinctions exist between the two concepts, contracts obtained by duress or undue influence are deemed invalid because in both circumstances the free assent of one of the parties in making the contract is lacking. *McCarthy* v. *Taniska*, supra, 84 Conn. 381; *Pickman* v. *Pickman*, supra, 6 Conn. App. 275. Moreover, acts of compulsion or influence by one party on another giving rise to a claim of duress or a claim of undue influence must be operative at the time the contract is entered into. *Shlensky* v. *Shlensky*, supra, 369 Ill. 186; 17 C.J.S., Contracts § 180 (c) (1963); 25 Am. Jur. 2d, Duress and Undue Influence § 13 (1966). Because both must be operative at the time the contract is entered into, it is not necessary for purposes of this case that we distinguish between duress and undue influence.

"Under our statutes, a court has an affirmative obligation, in [dissolution] proceedings, to determine

whether a settlement is 'fair and equitable under all the circumstances.' General Statutes § 46b-66.[2] The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. . . . With such judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." (Citations omitted.) *Hayes* v. *Beresford,* 184 Conn. 558, 567–68, 440 A.2d 224 (1981).

In performing her duties in connection with the dissolution proceeding, Judge Dranginis examined the agreement, found it fair and reasonable and canvassed the defendant concerning whether she had executed it voluntarily. Absent strong evidence to the contrary, the law presumes that a judge properly performed her duties. *Brash* v. *Brash,* 20 Conn. App. 609, 612, 569 A.2d 44 (1990). Although Judge Susco found that the defendant was not happy with the agreement, the record does not give any indication that this unhappiness was manifested in any way to Judge Dranginis, an experienced family court jurist. The test is, would a reasonable person conclude from the canvass that the defendant entered into the agreement voluntarily? *Gillis* v. *Gillis,* 214 Conn. 336, 339, 572 A.2d 323 (1990). We note that neither subsequent court, *Susco, J.* or *Pickett, J.,* found that the agreement was not fair and reasonable.

---

[2] General Statutes § 46b-66 provides in pertinent part: "In any case under this chapter where the parties have submitted to the court an agreement concerning . . . alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses . . . in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

A trial court's findings are entitled to deference on appeal; *Dalia* v. *Lawrence,* 226 Conn. 51, 627 A.2d 392 (1993); but only if there is a factual basis for those findings. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Here, there was no factual predicate to support the trial court's conclusion that the defendant's agreement was the product of duress. The fact that the defendant was represented by counsel during the negotiations that ripened into the agreement and was present at its execution militates against a conclusion that the defendant was acting under duress and not exercising her own free will. *Second New Haven Bank* v. *Quinn,* 1 Conn. App. 78, 82, 467 A.2d 1252 (1983).

In family relations cases, it is common that the parties come to the tribunal with a history of emotional turbulence. Stress and anxiety are frequent companions of predissolution negotiations. The plaintiff's conduct, of which the defendant now complains, took place during the course of the marriage and undoubtedly contributed materially to the breakdown of the marriage. The law encourages private settlement of the financial affairs of the litigants. *Hayes* v. *Beresford,* supra, 184 Conn. 568.

If we sanction the opening of a judgment for predissolution conduct, without evidence of a nexus between that conduct and the dissolution agreement, we cast doubt on all contractually based dissolution judgments. All judgments rendered on settlement agreements would be subject to undoing by a party seeking a second bite of the apple. This is contrary to the law's interest in finality of judgments. *Simons* v. *Simons,* 172 Conn. 341, 346, 374 A.2d 1040 (1977).

The trial court, *Susco, J.,* lacked an adequate basis for opening the November 27, 1991 judgment. In view

of this conclusion, we do not reach the issue concerning the expert witness testimony.

## II

### AMENDED APPEALS

Following the opening of the judgment, the trial court, *Pickett, J.,* held a full hearing and, on December 15, 1992, rendered an amended judgment involving the payment of periodic alimony. On February 22, 1993, the court held the plaintiff in contempt of court because of a three week arrearage in payment under this order. The parties concur that, if we sustain the plaintiff's appeal, the contempt finding based on the November 15, 1992 judgment must fall.

On February 1, 1993, the trial court, *Pickett, J.,* awarded the defendant $7500 in counsel fees to defend against the appeal. On February 17, 1993, the plaintiff requested an articulation of the award of counsel fees. In an articulation dated March 10, 1993, the trial court set forth the reasons for its decision. The plaintiff claims that the trial court acted improperly in setting the amount of counsel fees. In support of this claim, the plaintiff asserts that the defendant's financial situation was markedly superior to his at the time of the award.

General Statutes § 46b-62 provides that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."[3] "Whether to allow counsel fees and

[3] General Statutes § 46b-82 provides in pertinent part: "In determining whether [attorney's fees] shall be awarded . . . and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

in what amount calls for the exercise of judicial discretion. . . . In determining whether to allow counsel fees, the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities. . . . An abuse of discretion in granting the counsel fees will be found only if this court determines that the trial court could not reasonably have concluded as it did." (Citations omitted.) *Cook* v. *Bieluch,* 32 Conn. App. 537, 544, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993).

The record discloses that the trial court specifically considered the statutory criteria and the parties' financial abilities in determining whether to award attorney's fees. In its articulation, the trial court noted that "the defendant's affidavit discloses that she has had to borrow $26,500 for a car, attorney's fees and living expenses. To require her to seek additional funds from her family, if available, is unreasonable." In light of this finding and on the basis of the whole record, we cannot conclude that the trial court abused its discretion or acted unreasonably in awarding the defendant attorney fees to defend this appeal.

In addition, the plaintiff asserts that during the hearing on attorney's fees and in its subsequent articulation the trial judge made repeated references to his appeal's being frivolous, thereby manifesting an improper bias against him and tainting the court's analysis of the relevant statutory factors in making the award. The plaintiff's claim rests on pure speculation. He points to no specific evidence demonstrating that the trial court was predisposed to an improper award of attorney's fees for the defendant. Notwithstanding its statement that the appeal was without merit, the trial court explicitly stated that it had "considered the statutory criteria set out in General Statutes §§ 46b-62

and 46b-82 and the parties' respective financial abilities." Accordingly, the plaintiff's claim fails.

The judgment modifying the stipulated judgment is reversed and the case is remanded with direction to reinstate the November 27, 1991 judgment; the contempt finding is reversed and the award of counsel fees is affirmed.

In this opinion the other judges concurred.