[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REOPEN THE JUDGMENT
Furey, Donovan, Eddy, Kocsis, Tracy Daly for plaintiff.
Rosenzweig, Fagan Sheehan for defendant.
The plaintiff has moved to reopen a judgment of a dissolution of a marriage entered on January 25, 1993, claiming:
1. That the plaintiff, at the time judgment was entered that she was under extreme emotional duress and distress, the end result being that she did not fully understand the terms of the judgment nor, because of her emotional state, could she determine whether or not the same were fair and equitable and in her best interest;
2. That the plaintiff signed the agreement without adequate review and advice from her former counsel and only because he indicated to her that if she did not sign the same she would have a full custody trial;
3. And that the terms of the agreement are not fair and equitable. CT Page 6832
The court conducted a two day hearing on June 9, and June 10, 1994, during which both parties presented evidence regarding the proceedings leading up to the granting of the dissolution upon agreement of the parties.
At the conclusion of the hearing, the court ordered that both parties submit written briefs supporting their position and the court further ordered a full transcript of the proceedings from the court reporter. The court has now reviewed the briefs of both parties and the full transcript of the proceedings.
After the plaintiff's motion was filed and prior to the evidentiary hearing, the Appellate Court filed an opinion on the case ofJenks v. Jenks, 34 Conn. App. 462 (1994), which case is very similar to the issues raised in this case. In the Jenks case the court laid down the following guidelines:
 1. Duress is defined as "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." (p. 465 — emphasis added).
 2. The duress "must be imposed on [the party claiming duress] at or about the time [the party claiming duress] enters into the contract. (p. 466 — emphasis added).
 3. There must be a nexus between the alleged acts of misconduct and the execution of the contract. (p. 467).
 4. The argument that such a nexus is not required, as the plaintiff in Doty suggests, would discourage the settlement of dissolution cases by agreement. (p. 467).
 5. The judicial system must rely on the wisdom and skill of family session judges to canvass the parties to determine voluntariness. (p. 468).
At the preliminary hearing held on January 11, 1993, the plaintiff was given a draft agreement prepared by the defendant attorney. Transcript, p. 12. The plaintiff testified that this agreement, Plaintiff's Exhibit A, contain writings which are solely that of the plaintiff. An examination of this draft agreement, Plaintiff's Exhibit A, indicate at least twenty-eight comments written in by the plaintiff while she was reviewing this document. Among many changes and reflected in the final agreement were changes CT Page 6833 in the personal property, Schedule, A, Income Tax Exemptions added in paragraph 5, distribution of the 1991 tax refunds were addressed in paragraph 5C, homeowners insurance was added to paragraph 7, paragraph 9B was deleted, paragraph 9C was amended to provide additional items of personal property to the wife and paragraph 9F provides for the equal distribution of the defendant's retirement fund.
Contrary to the claim of the plaintiff that she had no communication with her attorney on the date that judgment was entered, she obviously discussed all of these changes with her attorney prior to the execution of the final documents.
Upon examination of Mr. Ross, plaintiff's former attorney, by Attorney Sheehan, the following colloquy took place:
 "Q. And wouldn't you agree with me that that's a very substantial modification between the proposal which provided for a mortgage and deed back, and the scheme of property settlement that was finally agreed upon and reflected in the separation agreement?
A. Yes.
 Q. So, and when was that modification — when did we reach the agreement changing that scheme of property?
 A. In the courthouse. In the courthouse that morning. Transcript June 9, 1994, p. 55.
Q. Now, were you discussing these changes with Mrs. Doty?
A. Yes, I was.
 Q. So the final agreement that was entered and is in the court's file is significantly different from the proposal that is Plaintiff's Exhibit A, is that correct?
A. It's different, yes."
Transcript, June 9, 1994, p. 56.
At the time of the final hearing on January 25, 1993, the State Trial Referee thoroughly canvassed the plaintiff regarding the proposed settlement and explained to her in detail all of her questions CT Page 6834 which she had at that time.
Finally, the plaintiff stated on page 19 of the transcript, "Thank you for your patience. I understand this agreement and I accept it as it sits." Transcript of Hearing, p. 19.
The plaintiff, having made these statements of her own free will, now comes back to court claiming, "The free will — the free will — I didn't have any free will and I felt as if my attorney was speaking more loudly for Attorney Sheehan's client's behalf than on mine, and he had not fulfilled anything that he was saying he would do. I felt abandoned, betrayed and taunted by Sheehan." Transcript, June 9, 1994, p. 23.
The question of the credibility of the plaintiff also comes into play in this case. The court observed her behavior over a two day period while she testified. She appeared to be in a highly emotional state while she testified. She presented a very highly tense person. Her jaws were clenched; she spoke with great emotion and feeling. She obviously had a great anger toward the defendant and his attorney. Her actions raised grave questions of credibility regarding her claimed statements of duress. And, finally, her claim of duress, which apparently existed over a long period of time, did not establish a nexus between the acts of duress and the signing of the agreement as required by the Jenks case cited herein.
There is no question that the fear of a custody battle as suggested to her by her attorney was foremost on her mind but that type of threat and problem almost always is claimed and threatened in a hotly contested dissolution action and is something that the parties might expect and be prepared to handle as part of their negotiation process. This threat in no way removed the plaintiff's last visage of free will as claimed by her attorney.
With respect to the issue of duress and the nexus required this court follows the rule laid down in Jenks v. Jenks stated herein. "If we sanction the opening of a judgment for predissolution conduct, without evidence of a nexus between that conduct and the dissolution agreement, we cast doubts on a contractually basis dissolution. All judgments rendered on settlement agreements would be subject to undoing by a party seeking a second bite of the apple. This is contrary to the law's interest in the finality of judgments." Simons v. Simons, 172 Conn. 341, 346; Jenks v.Jenks, 34 Conn. App. 462, 470. CT Page 6835
For the reasons set forth above, the motion to reopen the judgment is denied.
Jackaway, Judge.