[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual and Procedural Background
On July 19, 1993, the plaintiff filed a complaint against the defendant to foreclose a mechanic's lien in the amount of $8,764.00. The plaintiff claimed that he had performed work for the defendants by virtue of a written excavation contract, and he had not been paid. The contract (Plaintiff's Exhibit 1) provides for interest at the rate of one and one-half percent per month from the billing date, plus all costs of collection, including reasonable attorney's fees. Plaintiff's claim for relief does not specifically ask for interest, costs, or attorney's fees, however. Paragraph five of his prayer does request "such other and further equitable relief as may be required".
On November 12, 1993, the defendants answered the complaint, denying that the plaintiff completed the work and denying CT Page 42-C that they owed him any money. As special defenses the defendants alleged that the plaintiff did not complete the work and the work he did complete was deficient; they already paid the plaintiff; the contract was void "ab initio" as the defendants' signatures were obtained by fraud and misrepresentation; the contract was void "ab initio" as the defendants' signatures were obtained under duress; and there were no written change orders for additional work which the plaintiff claims he did. The defendants also filed a six count counterclaim, alleging two CUTPA violations, three counts of fraudulent misrepresentation and/or duress rendering the contract void "ab initio" or simply void, and one count of breach of contract, based on plaintiff's failure to complete the work or completion of the work in an unworkmanlike manner. The defendants seek money damages from the plaintiff for monies they claim they had to expend to correct and/or finish the work. The plaintiff denied all the special defenses and each count of the counterclaim.
The defendants own a piece of land at 14 Horseshoe Lane in Farmington, Connecticut, and were acting as their own general contractor in building a house on that land. They CT Page 42-D personally interviewed and hired all the subcontractors, including the plaintiff.
Trial commenced in this matter on December 13, 1994, and completed on December 14, 1994. Both parties were represented by counsel. The plaintiff testified in his own behalf and was called as a rebuttal witness in his own behalf at the conclusion of the defendants' case. The defendant, Mary T. Larson, testified in her own behalf. No other witnesses were called by either party. Both parties waived final argument to the court.
II. Discussion
A. The existence of a contract.
Prior to the court reaching the issue of whether or not a debt is owed to the plaintiff from the defendants, the court must first address defendants' claims that there was no contract. During trial, the defendant Mary T. Larson testified she and her husband did sign the contract (Plaintiff's Exhibit CT Page 42-E 1) but that she was upset with the plaintiff because the written document which he presented to them to sign did not represent their oral discussions. She also testified that on the morning she and her husband were to meet the plaintiff on the defendants' property regarding the contract's execution, the plaintiff had already commenced work, removing stumps from the lot. Ms. Larson testified that she felt forced to sign the document, even though she felt it contained misrepresentations, because the plaintiff was there and working.
The plaintiff testified that he and the defendants had reached an oral agreement regarding the terms of the contract, he was going to reduce it to writing, he would meet them on the lot the morning they requested him to commence work, and the defendants would sign it then.
A contract in order to be valid must be the result of the free assent of the parties making it. McCarthy v. Taniska,84 Conn. 377, 381 (1911). The classical or common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction CT Page 42-F without his own volition." Jenks v. Jenks, 34 Conn. App. 462,465-66 (1994). "The duress must be imposed on the defendant at or about the time the defendant enters into the contract. Any wrongful act or threat which actually compels the victim to act against his will constitutes duress." Id.
This court had an opportunity to view both the plaintiff and the defendant, Mary T. Larson, during their individual testimony over two days of trial. In order for this court to believe that Ms. Larson and her husband, defendant Roy E. Larson, were forced to sign the contract presented by the plaintiff, this court would have to find that the defendants were somehow coerced by the plaintiff. After this court's personal observation, the court is not persuaded that the defendants were in any way intimidated by the plaintiff. The Larsons did not have to sign the contract. As the plaintiff, Gil Dube, testified, if the contract was not signed, he would have packed up his equipment and gone home. While it is true that the plaintiff started work before the contract was signed, there would have been no damage to the defendants — Mr. Dube would have gone home and several of the stumps would have already been removed CT Page 42-G from the defendants' property.
Ms. Larson testified that certain terms in the contract were not true representations of what had been discussed between the parties. If that were the case, clearly the parties could have amended that written contract and initialed it, prior to signing the document. This was not done.
Based on the testimony from both parties, the court finds that the contract is a valid contract and any claims by the defendants of fraud, misrepresentation or duress have not been proven. Consequently, defendant's third and fourth special defenses are dismissed. Similarly, counts two, four, and five of the defendants' counterclaim are dismissed.
B. Connecticut Unfair Trade Practices Act.
In determining whether a practice violates CUTPA, the following criteria are used: (1) whether the practice without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common CT Page 42-H law, or otherwise — whether in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. Daddona v. Liberty Mobile HomeSales, Inc., 209 Conn. 243, 354 (1988).
As previously indicated, the defendants claimed that plaintiff's business dealings with them were fraudulent misrepresentations which induced them to execute the written contract. The defendants further allege that this behavior on plaintiff's part constituted a prohibited conduct which violates the Connecticut Unfair Trade Practices Act, Connecticut General Statutes, Section 42-100, et seq. While it is true that such behavior on the part of the plaintiff, if proven, might fall within a CUTPA violation, as this court stated, there was no evidence from any of the testimony that the plaintiff misrepresented anything to the defendants or that the defendants were forced to sign this contract. If there was no agreement between the parties as to the specific terms of the contract, the defendants could have used another excavator. (Ms. Larson testified that CT Page 42-I she had received estimates from two other excavators). Further, as Mr. Dube testified, "(He) would have packed up his toolbox and gone home."
Since the defendants have not proven fraud, duress, or misrepresentation, no CUTPA violation exists. Consequently, counts one and three of the defendants' counterclaim are dismissed.
C. The Contract Itself.
Since the court has found that there was a valid contract, the court must now determine whether or not the plaintiff completed the contract in light of the claims by the defendants that he did not. This determination is necessary to arrive at an indebtedness, if any, owing from the defendants to the plaintiff and to ultimately determine the issue of foreclosure. Plaintiff contends he completed the work and completed additional work for which he should be paid. The defendants allege that his work was deficient (First Special Defense and Sixth Count of the Counterclaim) and that he has already been paid (Second Special CT Page 42-J Defense), and that no change orders existed (Fifth Special Defense).
The majority of facts in this case are in dispute. Consequently, it is for the court to decide which of the parties is more credible on each of the contested issues. "The trier of the facts is the judge of the credibility of the testimony and of the weight to be accorded it." Maturo v. Gerard, 196 Conn. 584,587 (1985). Where one furnishes services under a contract at the request of another and with the expectation that he will be paid for his services, he is entitled to payment in accordance with the terms of the contract. First Hartford RealtyCorp. v. Ellis, 181 Conn. 25, 36 (1980). Where recovery is sought to be measured by the value of the services rendered, the court must have evidence to which it can apply an evaluation of a reasonable amount of damages. This claim also goes to the weight of the evidence presented and the credibility of the witnesses who testified at trial. Fuessenich v. DiNardo, 195 Conn. 144,153 (1985).
In this case, the contract consisted of ten items. CT Page 42-K The court will review these separately. The court will also review the plaintiff's claim that he performed additional work for which he should be compensated. (Plaintiff's Exhibit 3). It should be noted that the parties did agree that the defendants have paid the plaintiff the sum of $3,585.00 as of March 16, 1993. (Plaintiff's Exhibit 2). This figure will be discussed as it becomes applicable to certain items on the contract to which the court now turns.
1. Stump, grub, and bury — plaintiff claims he completed this portion of the contract and claims he was paid for it in the contract amount of $500.00. The defendants claim that the plaintiff encroached on a neighbor's property when he was clearing the lot. There was no evidence that any party had made any claim against the defendants based on this allegation. Accordingly, the court finds that the plaintiff completed item one on the contract and has been paid for his work.
2. Excavate foundation — plaintiff claims he completed this portion of the contract and claims he was paid for it in the contract amount of $1300.00. The defendants claim CT Page 42-L that the earth foundation was uneven and caused water retention in fixed areas. The plaintiff testified that when Ms. Larson told him about this, he viewed the site with her and measured the earth floor for deviation. He further testified that his measuring stick never showed more that a two inch variation; the defendants alleged there was as much as an eight inch variation. At any rate, the plaintiff is not seeking damages here; he claims he was paid, and the evidence (Plaintiff's Exhibit 2) shows payment in the amount of $1300.00. The defendants claim they sustained damage from the uneven floor and had to purchase more concrete and money for extra labor to fix this problem and fix other areas of the foundation which were excavated too deeply. Defendants offered no expert testimony to establish that the plaintiff had excavated too deeply, and they offered no acceptable evidence as to any expense they may have incurred. Accordingly, this court finds that the plaintiff completed item two of the contract and was paid for that work.
3. Install Interior Footing Drains and Install Roof Leaders — plaintiff claims he completed this work and he was not paid for it. The defendants claim that there were significant CT Page 42-M problems with the installation of the interior footing drains which caused flooding in the basement. There was testimony that the plaintiff did work on this area when it was brought to his attention by the defendants. He reset and resunk the sump basket in the floor although he testified that this was not his job but the job of the engineer on job. There was no evidence, expert or otherwise, aside from the defendant, Mary T. Larson, that this was a problem. The plaintiff testified that the system worked and there was no evidence before this court that the system is not currently in operation. Based on the evidence before this court, the court finds that the plaintiff did satisfactorily complete this item and should be paid for it in the contract amount of $1200.00.
4. Backfill, Rough Grade Lot, Box Out Driveway — plaintiff admitted he did not complete rough grading the lot, and he did not box out the driveway. He testified that the value of these items was $400.00 and $100.00 respectively. The defendants agreed through Ms. Larson's testimony that the interior and exterior foundation was backfilled. The defendants further agreed that the rough grading was not completed and the driveway was CT Page 42-N not boxed out. The defendants, however, offered no evidence as to the value of each of these items. Thus, the court is left with no choice but to adopt the plaintiff's values which total $500.00. The original contract price for completion of all these items was $1,400.00. Accordingly, the court finds in favor of the plaintiff on item four in the amount of $900.00, representing compensation for work he did complete.
5. Install Sanitary Lateral — plaintiff claims he completed this task, and in fact, he used more than the estimated sixty feet and did not charge the defendants for the difference. He also claims that he was paid the contract price for this, $1,200.00. (Plaintiff's Exhibit 2). The defendants presented no contrary evidence. Accordingly, the court finds that the plaintiff completed item five of the contract and has already been paid for it.
6. Install Water Service — the plaintiff claims he completed this job. The defendants offered no contradictory evidence. The evidence shows that the plaintiff has already been paid for this item. (Plaintiff's Exhibit 2). Accordingly, the CT Page 42-O court finds that the plaintiff completed item six of the contract and has been paid $585.00 for the work.
7. Install Electrical Conduit — plaintiff claims that he did complete this work and he has not yet been paid. Plaintiff testified that the conduit was longer than the contracted for 70 feet, but he did not charge the defendants for it. The defendant, Mary T. Larson, did admit on cross-examination that while the defendants did think that the linear estimates in items 5, 6, and 7 appeared low, the plaintiff never charged them for any extra footage. Based on this testimony, the court finds that the plaintiff did complete item seven of the contract and is owed the contract price of $315.00 for that completed work.
8. Return for Final Grade — the plaintiff testified that he did not return to the defendants' property to complete the final grading. Accordingly, the court finds that the defendant did not complete item eight of the contract and is entitled to no compensation for that item.
9. Process for Driveway — the plaintiff claims that he did CT Page 42-P delay in completing this item due to the defendants' nonpayment of items already completed. He testified further, however, that he did return with his equipment and someone he hired to complete this item so that the defendants could get a moving truck up the driveway. The plaintiff also stated that because he was not on the site at the time, he charged the defendants an extra $100.00. Consequently, he claims that the value of this item is $675.00 in lieu of the original contract price of $575.00. The defendants admit that this item was ultimately completed, although there was some conflict about whether or not stone or processed stone dust was to be used. There was never any substantial evidence to flesh this contradiction out. Accordingly, the court finds that the plaintiff completed item nine of the contract and is entitled to the contract price of $575.00 for this item. This court will not allow the additional $100.00 for this item as there was nothing in the written contract which allows for such expenses, aside from a change order. Both parties admitted that no change orders were issued for this job. (See paragraph 7 of Plaintiff's 1).
10. Fill Removal — plaintiff claims that he removed 300 CT Page 42-Q cubic yards of fill from the defendant's property, but that substantial quantities of fill remained. He testified that he told the defendants he would remove the extra fill at the agreed upon contract price of $3.00 per cubic yard. He testified that the contract called for an estimated amount of fill, 300 cubic yards, and that the defendants supplied him with that estimate. He stated that it was the parties' understanding that all fill would be removed at that per cubic yard price. The plaintiff claims he removed an additional 1,458 cubic yards and is owed $4,374.00 for that work. The defendants claim that the plaintiff told them he would remove all the fill, including any fill exceeding the estimated 300 cubic yards, at the total cost of $900.00. The parties do agree that the plaintiff did eventually remove the extra 1,458 cubic yards of fill. The plaintiff testified when cross-examined that it cost him about $1,080.00 for use of his equipment to remove the fill. However, he also testified that he was paid for the fill. There was no evidence presented to the court as to the amount of his payment.
Based on this contradictory testimony, this court finds that the plaintiff was entitled to recover $900.00 for CT Page 42-R removal of the fill, regardless of the amount of fill he removed. The contract calls for an estimated 300 cubic yards; no change order was issued pursuant to paragraph 7 of the contract to indicate otherwise; and on other contract items where estimates were made, the plaintiff admitted he did not charge the defendants extra money. Accordingly, as to item ten of the contract, the court finds that the plaintiff completed the work and is entitled to $900.00 as compensation for that work.
11. Additional items — the only additional item which plaintiff claims which the court has not dealt with appears as "extra footing drains" on Plaintiff's Exhibit 3, at a cost of $200.00. Again, there is no evidence that any change orders were executed between the parties; in fact, all parties testified that no change orders were used during the entire contract period. Accordingly, the court finds that the plaintiff is not entitled to the additional monies he claims for the extra footing drains.
In summary then, the court finds that the plaintiff is entitled to $3,890.00 for work he completed but did not get CT Page 42-S paid.
D. Attorney's fees, costs, and interest — the plaintiff claims he is entitled to interest at the rate of one and one-half percent from his last billing date, attorney's fees, and costs. No evidence was presented to the court regarding the amount of the plaintiff's attorney's fees or his costs. In fact, when questioned in that regard, he could not provide the court with an answer. Consequently, with no evidence before it, this court will not award either attorney's fees or costs. Plaintiff is entitled to interest pursuant to the contract, however. The last invoice entered into evidence was dated May 27, 1993. Interest at the rate of one and one-half percent per month from June, 1993, through December, 1994 amounts to $1,271.68.
E. The Debt.
The court finds the total debt owed to the plaintiff by the defendants to be $5,161.68, which represents monies owed the plaintiff on the contract in the amount of $3,890.00, plus CT Page 42-T interest as calculated above, in the amount of $1,271.68.
F. The Foreclosure.
Based on the court's findings regarding the debt, the court, in compliance with the defendants' wishes, orders a judgment of strict foreclosure. The court sets the date of June 30, 1995, as the defendants' collective law day.
III. Conclusion
A judgment of strict foreclosure may enter against the defendants in favor of the plaintiff in the amount of $5,161.84. The date of June 30, 1995, is set as the joint law day for both the defendants.
SUSAN B. HANDY JUDGE, SUPERIOR COURT