[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO REOPEN JUDGMENT
This case involves a claim by plaintiff former wife that a judgment of dissolution that she sought and obtained in 1989 be set aside as to the financial orders because of fraud and duress.
Facts and Background
The parties were married in September of 1972, separated in 1988 and divorced in 1989. In 1988 the parties were undergoing counseling for problems in the marriage. The plaintiff wife desired a divorce, the defendant husband did not. At the request of the wife and with the additional suggestion of the marriage counselor, the husband moved out of the house voluntarily in an attempt to ultimately foster a reconciliation. During this initial separation the husband, however, did object to the wife, who was an attorney, going to New York socially with a male attorney who practiced with the same law firm. She disagreed, and this disagreement, ultimately, involved her bringing an action for dissolution in March of 1989. During the separation period and well into the divorce, husband continued to give his paycheck to the wife, including a tax refund from his former employer in CT Page 2522 Massachusetts. She collected the rent for a condo they owned. From those monies, together with her own salary as an attorney, she paid the bills. During this early part of 1989 the husband changed employment to his current employer in order to secure from his perspective a better financial career. In fact, the wife told him how to seek additional funding from the new employer.
Sometime during either late spring or early summer of 1989, the arrangement of his giving his entire paycheck to her changed and he provided support to her for the three minor children in the amount of six hundred and fifty dollars per ($650.00) per week. She desired seven hundred and fifty dollars per week support. He wished to pay five hundred and fifty. The six hundred and fifty dollars was settled upon, without a court order, until the summer of 1989, when a masters' team during a pretrial recommended a six hundred dollar per week figure. Thereafter, the parties continued to live apart, without any temporary orders, and the husband paid the six hundred dollars per week as recommended by the masters without the necessity of court order.
The parties came to this Court in November of 1989 for the purposes of a pretrial and spent most of the day talking. At the end of the day, the matter settled. The document which formed the basis of the settlement was a proposed judgment which was prepared by counsel for the plaintiff wife prior to court that day. Some adjustments were made at the courthouse but those were primarily in wife's favor. The agreement which formed the basis of the judgment of the Court was the subject of questions and answers of the plaintiff, who appeared before the Honorable Samuel Goldstein. Those questions and answers asked by her attorney included the following:
 "Q Now, Mrs. Brown, you have signed and submitted to the Court a document entitled, Agreement, which has been executed by both you and your husband relating to the college expenses of your three children as well as to the agreements of your husband and you to maintain life insurance on your own lives at your own expense payable to each other. CT Page 2523
 And you have also submitted to the Court a stipulation that you've signed attached to which is a draft of a judgement file which sets out the terms which you're asking the Court to enter as the terms dissolving your marriage. Is that correct?
A That's correct.
 Q And have you reviewed those very carefully by yourself?
A Yes.
Q Have you reviewed them carefully with me?
A Yes.
 Q And have they been the subject of lengthy negotiations including approximately six hours today between you and me on the one hand and your husband and his attorney, Mr. Bourne, on the other?
A That's correct.
 Q Do you feel that the terms of this agreement and the judgment file are fair and equitable?
A Yes.
 Q And are you asking the Court to enter them as it's judgment dissolving your marriage?
A Yes, I am."
That judgment provided in part as follows: Joint custody of the three minor children, primary residence with the wife and reasonable right of visitation to the husband. Support for the minor children in the amount of six hundred dollars ($600.00) a week, with a penalty clause of five percent if the six hundred dollars was not paid by the Wednesday succeeding the Friday on which it was due. In addition, the husband was responsible for certain insurance CT Page 2524 coverage, one-half of the unreimbursed medical expenses, as well as life insurance. He was to pay one-half the college expense for the children. Further, Husband was to pay periodic alimony of one dollar per year, modifiable only if the wife was unable to work full time as an attorney. He was to convey all his right, title and interest in the family home, known as 59 Tollgate Lane, Avon, Connecticut, to the wife; she was to convey all of the right, title and interest in a condo owned by the parties at 56 Crocus Lane, Farmington, Connecticut and he would receive a mortgage back in the amount of $15,000. The plaintiff's financial affidavit opined the equity in 59 Tollgate Lane as one hundred and twenty-five thousand ($125,000.00), and that the condo had an equity of forty thousand ($40,000.00) He, in turn, reflected that the net equity value of 59 Tollgate as hundred and seventy thousand ($170,000.00), and that the condo equity was thirty-four thousand dollars ($34,000.00). She was to retain all the stock, 401(k) and IRA as listed on her affidavit. He retained his stock and his IRA and pension fund on his affidavit. She retained the overwhelming majority of the furniture and furnishings and personalty in the home.
According to her affidavit, her income from her parttime employment as a lawyer, after deducting for taxes, medical insurance, et cetera, was about seven hundred and eighty-five dollars per week together with an additional sum of twenty dollars from other income. His net income, according to his affidavit, after similar deductions, was between twelve hundred and seventy-seven dollars and fifteen hundred dollars per week.
At that time, there were no official guidelines in effect but the Hartford Judicial District utilized the so-called "Collucci guidelines, an income shares approach, as a tool of analysis. The amount the parties agreed to in 1989, exceeded the Collucci guidelines, it exceeded the State guidelines enacted in 1991 and it exceeded the current guidelines enacted in 1994. So, for example, the highest percentage of net income applicable to three children would be 32.7 per cent of the net income of both parties. The 1994 guidelines used that percentage for couples earning net income of $75,000 and that is the highest net income on the charts. The guidelines clearly state that as income increases the percentage of income CT Page 2525 attributable to support decreases. Using the 32.7 percentage, which may be higher than appropriate, the amount paid by the defendant exceeded those guidelines.
The agreement and judgment in 1989 did not end the Court's involvement.
On May 22, 1990, the plaintiff sought and obtained the restoration of her maiden name. Again, in July of 1990 the plaintiff sought an additional modification. The basis of that modification was the claim that the defendant didn't list the full value of his IRA on his November 3, 1989, affidavit. The husband claimed that he made the changes to reflect the fluctuating changes in the underlying securities that formed the basis of his IRA, but his wife claimed that she didn't see it. They settled the dispute by stipulation and court order of August 8, 1990, by reducing the amount of her mortgage to him from fifteen thousand dollars to ten thousand dollars. He claims that he settled this because the costs of litigation were exceeding the amount in issue.
On May 17, 1991, the plaintiff wife, acting through her new employer, brought a motion to reopen custody, child support, visitation, medical insurance, life insurance, et cetera.
On February 22, 1992, Judge Kaplan decided to increase the support from $600.00 per week to $675.00 per week. In deciding that case, he took into account bonuses received by the husband after 1989 as well as increases in the wife's income after 1989. On March 11, 1992, the wife moved Judge Kaplan to reconsider. She argued in that motion that the Judge did not consider certain evidence, including many items that form the basis of her current motion for claiming fraud and duress. Essentially, her claim was that the Judge did not consider but rather misunderstood the evidence.
In between the hearing on this motion seeking the overturning of the original divorce financial orders, there were a number of procedural motions. At the outset, even before this matter was heard, the plaintiff filed with the court a proposed finding of fact and conclusions of law consisting of a request for four hundred and seventy CT Page 2526 findings which proposal was fifty-five pages long. There have been further disputes between the parties concerning visitation and sundry other issues.
Law Applicable to the Case
Fraud
A final judgment in a marital dissolution will be set aside if there is fraud in securing the judgment. The elements involved in a claim of fraud are: (1) a false representation as to a statement of fact; (2) a statement was untrue and known to be untrue by the maker; (3) the statement was made with the intent of inducing reliance on it; and (4) the other party relied on the statement to her detriment. Gelinas v. Gelinas, 10 Conn. App. 167, 174
(1987); Billington v. Billington, 220 Conn. 212, 217
(1991). A marital judgment based upon an agreement may be set aside if the agreement and thus the judgment was obtained by fraud. Kenworth v. Kenworthy, 180 Conn. 129,137 (1980). There are only three limitations to the granting of relief on a claim of fraud, one, no laches by the injured party, two, clear proof of the fraud, and three, a substantial likelihood that the result of the new trial will be different. Bilington v. Billington, supra, 218, 219. In that context, full and frank disclosure is essential to the goal of private settlement agreements in divorce cases.
Duress
A judgment based upon an agreement can be opened if the court finds that the agreement was entered into because of duress. Connecticut Pharmaceutical Association v.Milano, 191 Conn. 55, 558 (1983). Celanese Fiber vs. PicYarns, Inc., 184 Conn. 461, 466 (1981). The classical or common law definition of duress is the wrongful act of one person that compels apparent assent by another to a transaction without his volition. Jenks v. Jenks, 34 Conn. App. 462,465 (1994). The question of the volition in modern days is viewed from the subjective viewpoint of the party compelled, so that he or she doesn't exercise free will. Jenks, supra, page 466. Although there is no case cited by either party the standard of burden of proof would appear to be clear proof as in the claim of fraud. 25: CT Page 2527 Am. Jour. Second: 31, 33. Thus both elements, a wrongful act and a fearful state of mind must be proved by clear proof
Credibility
Issues in this case which are in part factual are subject to the same credibility analysis as in all trials to the court. The trier of fact has to determine the credibility of witnesses and draw inferences related to and from facts that he finds to be true. Oak Leaf Marina Inc.v. Ertel, 23 Conn. App. 91, 94 (1990); Brethauer v.Schorer, et al, 81 Conn. 143, 144 (1908); Brunswick v.Inland Wetlands Commission, 29 Conn. App. 634 (1992).
The Court has listened to all the witnesses, looked at all the evidence and finds that the plaintiff has not proven her case of either fraud or duress by clear proof or for that matter by a fair preponderance of the evidence.
The Plaintiff's claim with regard to the issue of fraud, relate to several specific items: relocation allowance, bonus and profit-sharing, pay raise, security deposits, Credit Union, U.S.A. deposits, A.D.L. Program, and taxes, bank accounts, and IRA.
Applying the law to the claims of the Plaintiff, the Court makes the following findings:
Relocation Allowance
The relocation allowance, given by the Defendant's new employer, was appropriately expended on expenses related to his New York relocation prior to the dissolution, and there were no funds from this source in existence either at the pretrial, in August of 1991, or at the time of the judgment. The Defendant did not misstate either by commission or omission at the time of the negotiations, in November of 1989.
Bonus Profit-Sharing and Pay Raise
The Defendant, at the time of dissolution, had not received a bonus, profit-sharing, or pay raise, from his new employer. These were all paid after the divorce, in CT Page 2528 the year 1990. The Court finds that the Defendant neither knew he would get a bonus, or, if he had an inkling, the amount of the bonus at the time of dissolution. The Defendant did not misstate either by commission or omission anything with regard to the issues of bonus.
The Court further finds that the profit-sharing plan was totally discretionary with the employer, and at the time of the divorce, he was not entitled to it nor was it vested. The Defendant, again, with regard to this issue, did not misstate either by commission or omission.
The pay raise he received in January was totally discretionary with the employer, and he had no knowledge of it, and the Court finds that there was no misstatement, again, at the time of the divorce, in November, either by commission or omission.
Security Deposits
There were two security deposits for rent on the New York apartment and the Connecticut condo, and, technically from an accountant's perspective, a prepaid expense is an asset. Most people do not think of it in that way, and I find that his failure to include them was neither intentional or knowing nor of any significance in the outcome. In any event, they were, in fact, used for the expenses related to the rent, i.e., the last month's rent.
Credit Union, U.S.A. Deposits A.D.L. Program
There were three small items that were not listed in his affidavit: the Credit Union account, in the amount of five hundred and fourteen dollars; U.S.A. a deposit in the amount of twenty-five hundred; and an A.D.L. Retirement in the amount of $3000.
The Court believed the Defendant when he said that the omissions were unknowing and without intent to deceive or to induce alliance, just as I believed that the Plaintiff did not intend to deceive when she failed to list a much larger amount of personalty on her affidavit.[1]
Taxes
CT Page 2529
I find both parties were accurate in their affidavit as to their income and deductions for the thirteen weeks prior to November 3, 1995, as required by the Practice Book. All that information was accurate. Both parties did receive a tax refund in the following year, and I find that neither knowingly misrepresented their financial affidavit.
The Court will also note that both parties were familiar with their respective tax situation. Particularly as to the Plaintiff's claim, I find that there was no knowing intention to deceive.
Bank Accounts
Both parties did not reflect the actual balance in their checking account. In the case of the Defendant, he did not list the bank accounts because he was informed that his outstanding bills, which he had to pay from that account were in excess of the checking account. He neither listed the checking account nor did he list the bills, but the Court found from his testimony that the bills were in excess of the checking account, so, if anything, the affidavit was understated as to his liabilities. Again, neither affidavit was perfect, by both parties, but the Court finds that neither intended to deceive the other.
IRA
At the time of the hearing on November 3, 1989 the Defendant did have an IRA account, which was basically a stock account. That stock account fluctuated in value and had increased from the prior hearing in August. Defendant brought that material to reflect that change to the hearing and also made some changes in his affidavit, neither of which apparently were seen by the Plaintiff. However, that matter was subject to a modification before Judge Steinberg, and the parties resolved it by reducing the amount of the mortgage that the Defendant had to pay to the Plaintiff, by half the amount of the differential. So that matter was resolved a longtime ago. In any event, the Court did not believe that there was any intent to defraud.
In addition to the failure of the Plaintiff to establish fraud, she has failed to establish a likelihood that the result of a new trial would be different. CT Page 2530
Both, then and in the modification order that was granted by Judge Kaplan, the support ordered exceeded the child support guidelines that were generally used by the Court, in 1989, and also known as "The Colucci Guidelines," it exceeded the mandatory guidelines that were established in 1991, and it exceeded the guidelines that are currently in effect, in 1994.[2]
In addition, the provision for a five percent automatic penalty in a late payment, which the Plaintiff apparently sought, is uncommon and extremely beneficial to the Plaintiff. The alimony of one dollar a year, which was re-openable as long as she lives, if she cannot work as an attorney, would probably have exceeded the norm, considering the age of both parties when the divorce was granted, as well as the fact that her earning capacity was substantial. The property settlement was consistent with that which would normally be given.[3] The provision for college where the Defendant had to pay for a portion of the college expense, could not have been obtained if the case went to trial, since that requires an agreement.
The Court will also note that in her testimony before Judge Goldstein, the Plaintiff considered the agreement fair and reasonable. Judge Goldstein thought it was fair and reasonable. This Court also finds it fair and reasonable.
Duress
The Plaintiff's claims of duress are even less impressive or credible. The Plaintiff claims that she was concerned about the Defendant's pistol. Defendant had a pistol which he had since his days in the military academy. The uncontroverted testimony was that he hadn't fired the weapon in years, never threatened her or anybody else with it; and further, she never returned it to him.
She further argued that he had expertise in the Martial Arts, then had to acknowledge that he never utilized that expertise with her or in any other manner.
She claimed that he yelled at her at times during the divorce process. He claimed that she yelled at him during CT Page 2531 the divorce process. The Court finds that whatever yelling occurred, if any, that neither party was intimidated.
She claims he threatened a custody fight and a denial of child support. He denied it. He was credible. She was not.
The parties' actual functioning was consistent with his position and inconsistent with hers. For example, she controlled the paycheck even after the divorce was started, he never asserted a claim for custody, he paid support consistently without a court order in an amount that would exceed normal guidelines, and he never asserted his right to remain in the family home although the lawyers in her own office indicated to her that she could not keep him out of it with a restraining order because his behavior didn't violate any statutes.
She finally claimed that his attorney, Courtney Bourns, intimidated her by yelling at her on November 3, 1989 during negotiations. Not only did the Court believe testimony of Courtney Bourns to the contrary, but the documents prepared by her own attorney, which formed the basis of the court Judgment, were prepared prior to the parties coming to court on November 3, 1989. So that essentially the agreement that formed the basis of the judgment was prepared in her attorney's office before there was any contact with Courtney Bourns on November 3rd.
There were five or six written notes added to the November 3rd agreement, three quarters of which further benefit the wife.
And, finally, the transcript of the hearing before Judge Goldstein, on November 3rd, confirms further the basic unreliability of her claim of duress.
WHEREFORE, the Court-denies her motion to re-open on the basis of fraud or duress.
Barall, J.