[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM RE: MOTION TO OPEN JUDGMENT #127
The defendant filed this Motion to Open Judgment and to Modify, claiming that her mental health disabilities at the time of the entry of the judgment by stipulation were such that she was unable to make informed decisions and adversely affected her judgment and state of mind. Judgment in this case was entered on November 5, 1993, Cohen, Judge Trial Referee, pursuant to a "Settlement Agreement" signed on September 2, 1993. At the time the agreement was signed, and at the time of judgment, both parties were represented by counsel.
The agreement provides that no alimony was to be paid by either party to the other. The agreement also provided that the plaintiff would assume and hold the defendant harmless from all debts of the marriage, except for a small Master Card account in her name. While she transferred all of her interest in the them family home, it had no equity, and she was absolved of payment on the mortgage. The plaintiff paid moving expenses for her to go to California with her mother, who had been living with them at the time prior to the dissolution. A significant portion of his 401K plan was transferred by QUADRO to her. The largest part of that retirement asset had been earned by the plaintiff prior to their marriage. The parties agreed to separate their personal property, as well. The court's computation of distribution of marital assets found that the defendant received approximately seventy (70%) percent of the marital assets pursuant to this agreement.
The parties were married for eight years prior to the CT Page 6643 commencement of the action. Both parties agreed in their testimony that she had suffered panic attacks and migraine headaches during the marriage. She complained that she yearned to have a child, and that they decided together to have his vasectomy reversed. When she still did not get pregnant, she claimed that he lied to her about his infertility. She claimed that she felt betrayed by him because of his inability to father a child. She claimed that he did not tell her that a low sperm count would make a pregnancy doubtful, even after the reversal of the vasectomy. He testified that he traveled in his job and was away from the home often. After employment at sports-related stores, she ceased working in 1992 or 1993. She moved her mother into their two bedroom condo, and he had objected to the move. The defendant claimed that there was great stress in the home as a result of his unhappiness with this, and the defendant's mother testified that the plaintiff was pleasant, but did not have too much to say to one another.
The defendant testified as to her claimed infirmities. She described panic attacks and headaches from the early 90's, and testified that she was so frustrated at not being able to become pregnant that "she didn't know what to do." She claimed that she tried to make her husband happy, and after she had moved her mother in, he told her he no longer wanted to be married to her. She was expected to cope with moving out of the home, having no marriage, no job, and no child. She claimed that she had fear of plaintiff at this time, was anxious about the move to California because of the distance, and that she did not have the strength to go to court and fight.
She agreed on cross-examination that the divorce was delayed so that she could get necessary but expensive dental work done on his policy. She was attempting the work out an insurance plan, since his HMO was not convertible to California. He cooperated by giving her the names of national HMO's, but she had as much work as possible done while she was still married to the plaintiff. The gravamen of her claim is that she never would have agreed to a dissolution which provided her with no periodic alimony without the mental health infirmities she had.
The plaintiff called the defendant's expert to testify. Dr. Kenneth P. Bangs had treated the defendant during the period in question. His testimony is dispositive of the claims of the defendant. Dr. Bangs testified that he had treated the defendant first on June 11, 1992, when she presented with symptoms of mild CT Page 6644 agoraphobia and panic attacks. He found her mentally competent but upset and anxious. During the course of treatment those problems began to resolve. She was prescribed Xanax for anxiety until March of 1993, and dizipromine for depression during the course of treatment. She was employed during the treatment and engaged in hobbies such as golf and care of her pet dog. During the period of June, 1992 until August of 1993, when they discontinued treatment due to her move to California, he observed an improvement of her symptoms, including a noticeable decrease of anxiety, an absence of panic attacks for a number of weeks, and a more positive mood concerning her self image, and her future.
Dr. Bangs testified that she was capable of making decisions about herself and her life in June of 1992 continuing to August of 1993. He testified that she freely came to his office and was generally able to understand her mental health issues. Any distress that she felt and they discussed concerning the divorce was appropriate to the circumstances. She was able to resolve the emotional response to her divorce. She discussed with him her future plans to live with her mother in California so that they would be near her brother. The move was voluntary, and her plans were positive. He testified that she had made reasonable plans concerning getting established and seeking employment after her move. He testified that she had no delusions of thought process, and was able to help her attorney in negotiating through the divorce, and that nothing in their conversations could lead him to believe that she lacked capacity.
Dr. Bangs testified to their sessions during the time the "Settlement Agreement" was being negotiated. He said that the patient was not happy with it, but was accepting of it. She was grieving the loss of the relationship. While she had some sense of loss and upset with respect to the finality of that loss, she was not under extreme duress during that time. Her apprehension concerning her future was present, but she could make informed decisions, and had the ability to understand the proceedings. Dr. Bangs testified further that the patient had sound judgment, and that her competency was never impaired throughout his treatment of her, and that was never an issue during their sessions.
It is clear from this record that the defendant has not met her burden of proof on the claim that this agreement which became the judgment of the court was induced by extreme duress or mental incapacity. Her own therapist testified that she was competent, CT Page 6645 and of sound judgment when the agreement was negotiated. While there is evidence that she was not entirely happy with the agreement, she signed an affidavit that stated that the agreement was acceptable, and that it was fair and equitable under the circumstances. That affidavit was produced on November 5, 1993, at the hearing on the dissolution, after the defendant had relocated to California.
The court is mindful of the important decisions parties make to end their marriages, and understands that their lives may not proceed as earlier envisioned. However the standard for opening a judgment of the court is a stringent one, and one which has not been met here. Furthermore, the standards necessary to open the contractually based judgment of the court are not the same as the fully litigated case. Jenks vs. Jenks, 34 Conn. App. 462,642 A.2d 31, rev'd, 232 Conn. 750, 657 A.2d 1004 (1995).
The motion to open and modify is denied.
DRANGINIS, J.