SANDRA PICKMAN *v.* E. STEVEN PICKMAN
(3136)
(3454)

HULL, DALY and BIELUCH, Js.

Argued November 12, 1985—decision released February 18, 1986

*Patty J. Pittman,* for the appellant (defendant).

*Arnold M. Potash,* with whom, on the brief, was *Hillard N. Einbinder,* for the appellee (plaintiff)

DALY, J. These are consolidated appeals by the defendant husband arising from a dissolution of marriage. In Appeal 3136, the defendant is appealing from the clarified judgment of dissolution requiring him to be responsible for the college educational expenses of his two sons, one of whom had reached his majority at the time of the dissolution. In Appeal 3454, he challenges the denial of his motion to modify the dissolution order and the granting of attorney's fees to the plaintiff.

By an "Agreement" executed at the dissolution hearing on September 21, 1983, the defendant, E. Steven Pickman, agreed that "[h]e will pay the entire cost of the college education of each child issue of the marriage, DAVID PICKMAN and JOSEPH PICKMAN, and he shall be responsible for the cost of said college education including but not limited to Tuition, Room and

Board, Books and Living Expenses as he is financial[ly] able to." This agreement was included in the judgment of September 21, 1983, and reaffirmed and elaborated in the memorandum clarifying the judgment dated March 5, 1984. The clarification of judgment indicated that the defendant consulted with his counsel before signing the agreement and that no objection was made to entering the agreement as part of the court's judgment.

I
(3136)

In this appeal, the defendant claimed that the document signed was not a proper agreement within the purview of General Statutes § 46b-66 and, hence, the court was in error in incorporating it into the judgment. Section 46b-66 provides that where the parties have submitted an agreement concerning, inter alia, the financing of a child's education, the court may look into the financial needs and resources of the parties as well as their ability to have custody of any minor child in order to determine whether the agreement is equitable. "If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . . If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree. . . . " Id.

The defendant maintains that no consideration was offered for a valid agreement, that no substantial change of circumstances had taken place since the judgment to warrant its modification, and that undue influ-

ence was exerted upon him to sign the document, and the order to pay the educational expenses was inequitable.

At the trial, on cross-examination, the defendant testified that he would pay for the college education of his two sons. When asked by the plaintiff if he would attest to this in writing, the defendant agreed, after the court insisted that he first confer with his counsel before responding. The defendant stated that "[i]f it said as I'm financially able to, of course I'll sign it." Once again, the court insisted that the defendant confer with his counsel before confirming his response to the plaintiff's request. The defendant did so, added at the end of the agreement in his own handwriting the words "as he is financial[ly] able to," and the agreement was signed. The state trial referee then accepted the agreement without objection and entered it as part of the judgment, stating: "I think [making the agreement] was a good solution to that problem because I am pretty much interested in the well being of the children." The defendant responded: "I think we all are."

"The word 'agreement,' in its popular and usual significance, means no more than *concord*; the union of two or more minds; or a concurrence of views and intention. . . . This concord or union of minds, may be lawful or unlawful; with consideration, or without; creating an obligation or no obligation. . . . The word 'agreement,' if there be nothing to limit its meaning, regards *promises* only, and not their *consideration*." *Sage* v. *Wilcox*, 6 Conn. 81, 85–87 (1826). (Emphasis in original.)

The provisions of General Statutes § 46b-66 appear to have been satisfied by the court's finding that the agreement was valid and properly consented to by both parties. The clarification of judgment reveals that the defendant carefully considered the written agreement and consulted with his counsel before both parties

signed it, and that the defendant handwrote some words at the end of the agreement before agreeing to the final form. Finally, because the agreement provided for the educational expenses of the two sons beyond the age of eighteen, it was properly incorporated or made a part of the dissolution decree.

The defendant's second claim, that there had been no change of circumstances since the original judgment, need not be considered because the clarification did not modify or alter the terms of the original judgment regarding collegiate expenses.

The defendant next claims that the plaintiff's counsel exercised undue influence in the execution of the agreement, thereby rendering an inequitable result. In addition, the defendant contends he was forced to undergo settlement discussions in the presence of the court, placing him in a strained and vulnerable position. Undue influence is the exercise of sufficient control over a person, whose acts are brought into question, in an attempt to destroy his free agency and constrain him to do something other than he would do under normal control. *Reynolds* v. *Molitor,* 184 Conn. 526, 528, 440 A.2d 192 (1981). "It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." 25 Am. Jur. 397–98, Duress and Undue Influence § 36. Relevant factors include "age and physical and mental condition of the one alleged to have been influenced, whether he had independent or disinterested advice in the transaction . . . consideration or lack or inadequacy thereof for any contract made, necessities and distress of the person alleged to have been influenced, his predisposition to make the transfer in question, the extent of the transfer in relation to his whole worth . . . failure to provide for all of his children in case

of a transfer to one of them, active solicitations and persuasions by the other party, and the relationship of the parties." Id.

The defendant possesses a D.M.D. (Doctor of Medical Dentistry) degree, was accorded every opportunity to consult with his counsel prior to signing the agreement, and had already indicated in his financial affidavit of September 20, 1983, a basic weekly expenditure of $200 for college tuition. The burden of proof where undue influence is alleged is on the party who asserts it. *Stanton* v. *Grigley,* 177 Conn. 558, 565, 418 A.2d 923 (1979); Holden & Daly, Connecticut Evidence § 65c. The defendant has failed to sustain his burden of proof on this claim.

## II
## (3454)

The defendant has also appealed from the denial of his motion to modify the college tuition order on the basis of a substantial change of circumstances of the parties since the signing of the agreement and from the granting to the plaintiff of $2000 in attorney's fees to defend the appeal.

In seeking a modification, a party must "clearly and definitely" demonstrate a substantial change of circumstances that had not been contemplated at the time of the order. *Kelepecz* v. *Kelepecz,* 187 Conn. 537, 538, 447 A.2d 8 (1982); *Wingerd* v. *Wingerd,* 3 Conn. App. 261, 262, 487 A.2d 212 (1985). "A substantial change in circumstances demonstrates that continued operation of the original order would be unfair and improper." *Wingerd* v. *Wingerd,* supra; *Noce* v. *Noce,* 181 Conn. 145, 149, 434 A.2d 345 (1980). As the trial court has broad discretion in domestic relations cases, our review of the exercise of such discretion is limited to whether the trial court correctly applied the law and could reasonably

have concluded as it did. *Holley* v. *Holley,* 194 Conn. 25, 29, 478 A.2d 1000 (1984). "Trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are significant." *Wingerd* v. *Wingerd,* supra, 263; *Hardisty* v. *Hardisty,* 183 Conn. 253, 260, 439 A.2d 307 (1981).

While there was a change of circumstances here, the trial court could, within its discretion, determine and did so find on July 23, 1984, that the change was not substantial enough to warrant a modification.

After denying the plaintiff's request for attorney's fees, the trial court without another hearing awarded attorney's fees to the plaintiff in the sum of $2000. The award of attorney's fees and in what amount requires the exercise of judicial discretion. *Friedlander* v. *Friedlander,* 191 Conn. 81, 87, 463 A.2d 587 (1983). The trial court should not, however, have changed its decision without granting another hearing after its original denial of the motion. Because the plaintiff raised the issue of attorney's fees, the defendant was entitled to cross-examine the plaintiff with respect to her financial status concerning her ability to pay for her own counsel. The defendant was denied the opportunity to inquire about an inheritance which the plaintiff may have received from her father who had died. An inheritance constitutes more than an "expectancy," the "bare hope of succession to the property of another. . . . The moment of the decedent's death determines the right of inheritance or testamentary succession." *Krause* v. *Krause,* 174 Conn. 361, 365, 387 A.2d 548 (1978). Whether the grandfather had left funds to his grandsons particularly for their college education is a relevant avenue for cross-examination. "[C]ross-examination . . . is a substantial legal right which may not be abrogated or abridged at the discretion of the court

to the prejudice of the cross-examining party." *State* v. *Cooper,* 182 Conn. 207, 213, 438 A.2d 418 (1980); Holden & Daly, Connecticut Evidence § 10c. We find that there was harmful error for the trial court to have restricted the defendant's right to cross-examination.

There is no error in Appeal 3136. There is error in part in Appeal 3454, the judgment with respect to the award of attorney's fees is set aside and the case is remanded for further proceedings in accordance with this opinion.[1]

In this opinion the other judges concurred.

---

[1] While the matter was not raised by the parties, there is a question whether the sons should be given a notice of the proceedings so that they might engage counsel if they desire to do so, to protect their interests.