[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. On the return date the parties had been married almost 13 years. They have one minor child who is 11 years old.
Both parties are 39 years old. While Mr. Ramonas' health is good, Mrs. Ramonas was diagnosed with multiple sclerosis over CT Page 5662 ten years ago, and her illness prevents her from working on more than a part-time basis as an ultrasound technician. Prior to her diagnosis and the birth of the parties' child, which occurred contemporaneously, she worked full-time and contributed to the support of the household. Presently she is able to work only 12 hours a week, and her gross weekly income is $290, from which she nets $172. While no medical testimony was introduced concerning Mrs. Ramonas' prognosis, it seems reasonable to expect that her health will continue to deteriorate, as it has in the past several years, and that her illness will permit her to work, if at all, on only a limited basis.
Mrs. Ramonas claims weekly expenses of $495, including the weekly equivalent of $500 in rent paid monthly to her mother. While those payments were documented by Exhibit 1 for the months of September 1996 through March 1997, the court does not consider them to be reasonable and necessary expenses in view of the fact that Mrs. Ramonas has the sole ownership interest in the property after the expiration of her mother's life estate. No evidence was introduced to show that the property has any outstanding mortgages or liens which require payment, and Mrs. Ramonas' mother testified that she pays her own electric bill. The apartment now occupied by Mrs. Ramonas was previously occupied by a tenant who moved to the basement apartment at a somewhat reduced rent. Therefore, the court considers the only real cost to Mrs. Ramonas and her mother to be the reduced rental cost from the previous tenant's move to the basement apartment. Allowing for this expense, the court concludes, as it did at the pendente lite stage, that Mrs. Ramonas' weekly expenses are overstated, and that a more reasonable figure for her current out-of-pocket expenses is $350.
Mr. Ramonas has been self-employed as a design engineer for almost four years. He works out of the former family home and, based on his current financial affidavit and his earnings for 1996, nets about $470 a week. While the court accepts these figures as an accurate reflection of his present earnings, his earning capacity may well be greater, as evidenced by his business' gross receipts of over $98,000 in 1995 as compared with $45,000 in 1996. He has interest and dividend income of approximately $22 weekly.
The parties jointly own their former family home at 58 Cathy Lane, Waterbury. It is doubtful that the property has any substantial equity at the present time. In addition, Mrs. CT Page 5663 Ramonas owns an undeveloped lot in Naugatuck, which has recently been appraised at $38,500, as well as an undetermined interest in her father's estate, including some real property in the town of Shelton. The Naugatuck lot was a gift to her from her family during the parties' marriage.
Mrs. Ramonas and the parties' son, David Jr., live on the second floor of a two-family home in Naugatuck. The first floor is occupied by Mrs. Ramonas' mother, who has a life interest in the property from her husband's estate. Upon her death, Mrs. Ramonas will have an undivided interest in that property. A basement apartment is rented to an unrelated tenant.
David, Jr., spends weekends with Mr. Ramonas and one night during the week, sometimes overnight. While Mr. Ramonas testified that David's weekends consist of Friday night to Monday morning, and that he stays overnight at least one night each week, the court has doubts about that claim based on both his own and Mrs. Ramonas' testimony.
Each party has a pension. Mr. Ramonas' pension benefits accrued during the time he was employed by Owens-Illinois, 1980-93, ten years of which were after the parties married. Mrs. Ramonas' benefits are payable by her present employer, where she has worked for 18 years, 15 of them since her marriage. Very little evidence was introduced concerning the values of those pensions, but, comparing Exhibits H and I, the court finds that Mr. Ramonas' pension benefit is projected to be $359 monthly at age 65 while Mrs. Ramonas' monthly pension benefit is projected to be $120, with no age of entitlement specified. Mr. Ramonas' pension benefit seems clearly superior to Mrs. Ramonas', but no evidence was introduced as to their respective present values.
While the court considers these valuable assets which should be subject to equitable distribution, the record is inadequate to allow such a distribution at this time. Accordingly, the court will adopt the "reserved jurisdiction" method approved by the Supreme Court in Krafick v. Krafick,234 Conn. 783, 803 (1995), and retain jurisdiction to distribute the parties' pensions at such time as the benefits under one or more have matured or at such other time as the parties may petition the court.
Both parties testified as to their views of the causes of the breakdown. Mrs. Ramonas claimed that the cause was Mr. CT Page 5664 Ramonas' relationship with another woman, but the testimony was unclear whether that relationship began at a time prior to the breakdown. Accordingly, the court will not make such a finding. See Turgeon v. Turgeon, 190 Conn. 269, 278-79 (1983). The court is left to wonder, however, why Mr. Ramonas sought to end this marriage in 1996 when his own testimony as to the causes of the breakdown referred to factors in the parties' relationship which had existed for several years. The court believes, based on the testimony of Mrs. Ramonas, that Mr. Ramonas' insensitivity to the limitations imposed on her by her illness and his inability to cope with those limitations over time contributed to the marriage breakdown.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
David, Jr. clearly lives with Mrs. Ramonas. It is in his best interest to continue to reside with her and to have plenty of contact with Mr. Ramonas. Albeit her work is part-time, the demands of her employment, of her illness and of her day-to-day care for David, Jr. leave Mrs. Ramonas with little time truly to enjoy her son's company. Therefore, her request for some weekends with David, Jr. is reasonable. As indicated above, the court doubts Mr. Ramonas' claims as to the length of time David actually spends with him on weekends and during the week. Therefore, the court will not deviate from the child support guidelines to reflect a "shared custody" arrangement. For the present the parties' fairly conventional method of sharing time with David, Jr. will continue, with a change to allow Mrs. Ramonas some weekends. CT Page 5665
The overarching financial reality in this case is Mrs. Ramonas' illness and the need for continuing support which it creates. Mr. Ramonas has the ability to meet that need for support, although it appears to be limited at the present time. Therefore, the court will enter orders calling for lifetime alimony and periodic reporting by Mr. Ramonas of his income to Mrs. Ramonas.
An equitable distribution of the parties' assets requires consideration of the fact that Mrs. Ramonas presently owns outright real property with a fair market value of $38,500 and a share in her father's estate of an undetermined amount and will enjoy absolute ownership of the premises where she presently lives upon her mother's death. The fact that these properties were given to or inherited by Mrs. Ramonas does not exclude them from the marital estate. See Watson v. Watson,221 Conn. 698, 711 (1992). The value of the latter two properties, however, is undetermined at the present time. In the case of Mrs. Ramonas' current residence, no evidence was introduced as to the fair market value of the property or the value of her mother's life interest. In the case of her share in her father's inheritance, the major component consists of real estate in Shelton which has a fair market value of almost $400,000[1]. This estate, however, devolves from Mrs. Ramonas' grandfather, who died 18 years ago, and remains unsettled. It was agreed between the parties that Mrs. Ramonas' share in that estate does not exceed 1/12 of its total value. Since Mrs. Ramonas' father has already died, her interest in his estate is more than a mere expectancy. Pickman v. Pickman,6 Conn. App. 271, 277 (1986). The value of her interest is undeterminable at this time, however. Therefore, the court will not include that amount in these parties' marital estate. If and when Mrs. Ramonas' share is determined, it may serve as a basis for modification of child support and/or alimony. See Eslami v.Eslami, 218 Conn. 801, 806-08 (1991).
There was confused testimony concerning whether Mrs. Ramonas' parents made one or more than one gift of $10,000 to the parties during their marriage, and whether one of those gifts constituted funds actually belonging to Mrs. Ramonas' mother. It is unnecessary to resolve the disagreements between the parties' testimony. Whether Mrs. Ramonas or her mother considers the $10,000 now held in a CD in Mrs. Ramonas' name her mother's money or her own, by virtue of the gift(s) to her during the marriage, all of the sums presently on deposit in CT Page 5666 both parties' names are part of their marital estate.
Mrs. Ramonas' opportunity for future acquisition of property, a factor to be considered under § 46b-81 of the General Statutes, may appear more limited than Mr. Ramonas' due to her illness and the limitations it imposes on her earning capacity. By virtue of a gift and inheritances from her father, however, she already owns outright an undeveloped lot with a fair market value of $38,500 and, upon the expiration of her mother's life interest, will own outright an income-producing property. In view of these factors, the assets of the parties which can be presently valued will be distributed equally.
The parties' marital estate, excluding motor vehicles and pensions, amounts to approximately $83,398, based on the evidence introduced at trial. The components are several bank accounts and certificates of deposit, Mrs. Ramonas' undeveloped lot, a stock account in Mr. Ramonas' name and his IRA rollover. All of these assets will be divided equally. A camper, valued on Mr. Ramonas' financial affidavit at $3,600, will become his sole property, thereby making for a slightly unequal distribution of the total estate. This discrepancy is more than offset by Mrs. Ramonas' undetermined but real remainder interest in the income-producing property where she presently resides, to say nothing of her future interest in her father's estate.
Finally, Mrs. Ramonas requests and Mr. Ramonas resists a contribution from him to her counsel fees. Considering the respective financial abilities of the parties after the distribution of assets and the other financial obligations placed on Mr. Ramonas, the court does not consider that Mr. Ramonas has any greater ability than Mrs. Ramonas to pay counsel fees and will not order that any of her attorney's fees be paid by him.
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown. CT Page 5667
2. The parties shall have joint legal custody of the minor child. His primary residence shall be with the defendant.
3. The minor child shall spend three weekends out of every four with the plaintiff, from Friday after school until Sunday at 8:00 p. m. The parties shall establish a rotating schedule for these weekend visitations. In addition, the minor child shall spend one overnight with the plaintiff each week, to be determined between the parties in accordance with the minor child's schedule of school and other activities. The minor child may spend two non-consecutive weeks with the plaintiff during each summer, and the plaintiff shall give the defendant 30 days notice of his intent to exercise these visitation rights. The parties shall agree between themselves as to the minor child's holiday visitation schedule. If they are unable to agree, they shall apply to the Family Services Office for assistance through mediation. The court retains jurisdiction to resolve any differences between the parties.
4. The plaintiff shall pay to the defendant by way of child support $152 weekly in accordance with the child support guidelines.[2]
5. The defendant shall continue to maintain medical insurance for the benefit of the minor child, as available through her employment. If said insurance is no longer available through her employment, the parties shall exercise their best efforts to obtain insurance for the minor child, either through employment or privately, and they shall share equally in the cost of such insurance. All unreimbursed or uninsured medical, dental and similar expenses shall be divided between the parties, with the plaintiff to pay 75% and the defendant 25%. The provisions of § 46b-84 (d) of the General Statutes are incorporated herein by reference.
6. The plaintiff shall pay to the defendant by way of periodic alimony $1.00 per year, which obligation shall terminate upon the death or remarriage of the defendant.
7. By no later than March 1 of each year, the plaintiff shall provide the defendant with a copy of his individual income tax return for the preceding year, specifically including Schedule C thereof and all schedules related thereto. CT Page 5668
8. The plaintiff shall designate the defendant as the primary beneficiary of all of his presently outstanding life insurance, not exceeding $65,000, and he shall maintain the defendant in that status for as long as his obligation to pay alimony or child support continues. Annually, he shall provide proof to the defendant of the paid up status of the policy(ies) and her status as primary irrevocable beneficiary.
9. Within 30 days of the date of dissolution, the defendant shall quitclaim to the plaintiff all of her right, title and interest in the former family home at 58 Cathy Lane in Waterbury. The plaintiff may choose whether or not to place the property on the market for sale and may retain any net proceeds of sale. He shall be solely responsible for paying the mortgage, taxes and all other charges and shall indemnify and save the defendant harmless.
10. The property lot known as #10E Wooster Street, Naugatuck, shall be promptly placed on the market for sale and sold, and the net proceeds of sale, after deduction of real estate commissions and the other customary costs of sale, shall be divided equally between the parties.
11. All of the parties' bank accounts, including certificates of deposit and specifically including the certificate of deposit reflecting the gift of $10,000 by the defendant's mother in August 1995, shall be divided equally between the parties.
12. The parties shall share equally in the plaintiff's IRA rollover, as valued in Exhibit G, and in his stock account, as valued in Exhibit F. The plaintiff shall transfer to the defendant by way of a Qualified Domestic Relations Order or other vehicle intended to eliminate or minimize the tax consequences to the parties one-half of the balance in the account shown in Exhibit G as of March 27, 1997.
13. Except as otherwise ordered, the parties shall retain the motor vehicles and other personal property shown on their respective financial affidavits at the time of trial. The 1994 Star Craft pop-up camper shall be the exclusive property of the plaintiff, and the defendant shall execute whatever documents are necessary to transfer any ownership interest she may have to the plaintiff.
14. Each party shall be solely responsible for the debts CT Page 5669 listed on his or her respective financial affidavit and shall indemnify and hold the other party harmless from any liability thereon.
15. The court retains jurisdiction to distribute the parties' pension benefits in an equitable manner.
16. All United States Savings Bonds presently in the possession and control of the plaintiff, which bonds were purchased for the benefit of the minor child, shall be turned over to the defendant within 30 days of the date of dissolution. The defendant shall hold these bonds for the sole benefit of the minor child and shall not use any of the proceeds of those bonds for any other purpose.
17. Each party shall pay her or his own counsel fees.
SHORTALL, J.