[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff, Kyle P. Packer, a senior at Thomaston High School, has invoked the federal and state constitutions to challenge his expulsion from Thomaston High School. On September 24, 1997, the plaintiff was arrested, off school grounds, after a police officer discovered approximately two ounces of marijuana concealed in the lining of the trunk of his car. Following a legislatively mandated report of this arrest to the superintendent of schools, school administrators investigated the circumstances, met with the plaintiff and his parents, Jane and Gary Packer, and recommended to the Board of Education that the plaintiff be expelled. On October 8, 1997, after giving the appropriate notice, the Board held a hearing at which plaintiff appeared, represented by counsel. At the hearing, the Board received information concerning, among other things, the circumstances of the arrest plaintiff's past connections with alcohol and marijuana and the effect of the arrest on other students. The factors presented to the Board included the amount of the marijuana, the presence in plaintiff's care of his younger brother and a friend of the plaintiff who had previously been expelled from Thomaston High School for distributing drugs, plaintiff's prior suspension from the basketball team and allegations of drug use which resulted in the forfeiting of a soccer game. At the conclusion of the hearing, the board voted to expel the plaintiff for the rest of the marking CT Page 1187 period (until January 23, 1998), and to exclude the plaintiff from extra-curricular activities for the remainder of the school year.
Nearly one month after the expulsion hearing, the plaintiffs filed this action and, on November 5, 1997, this court entered an ex parte temporary restraining order requiring the Board to allow Kyle Packer to attend classes at Thomaston High School. A hearing on the application for a temporary injunction was held December 1, 1997.
The sole issues raised in this case are: (1) whether the Board's actions violated the federal or state constitutions; and (2) whether the statute under which the Board proceeded is itself constitutional.
One court has summarized the requirements for issuing a temporary injunction as follows:
 A temporary injunction cannot issue unless the plaintiff shows that he will probably prevail on the merits of his claim. Murphy v. McNamara, 36 Conn. Sup. 183, 197, 416 A.2d 170. The plaintiff also has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. Waterbury Teachers Association v. Civil Service Commission, 178 Conn. 573, 577, 424 A.2d 271
(1979). These allegations and proof are threshold requirements for the granting of an injunction. Id. Even where these elements are shown, the decision to grant an injunction is within the sound discretion of the court. See, e.g., Koeper v. Emanuele, 164 Conn. 175, 178, 319 A.2d 411 (1972). The equities of the case should tilt decidedly in favor of the plaintiff. Hartford Electric Light Co. v. Levitz, 173 Conn. 15, 21-22, 376 A.2d 381
(1977). Schnabel v. Rocky Hill Town Manager, Super. Ct. No. 703382, 11 CONN. L. RPTR. 570, 1992 WL 315955 at **2 (October 23, 1992) (Schaller, J.).
I CT Page 1188
Connecticut General Statutes Section 10-233d(a)(1) provides, in part, that a board of education may expel "any pupil . . . whose conduct off school grounds . . . is violative of [a publicized policy of such board] and is seriously disruptive of the educational process." The complaint alleges that this section is unconstitutionally vague.
A party challenging the constitutionality of a statute bears a particularly heavy burden:
 a validly enacted statute, carries with it a strong presumption of constitutionality, [and] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. (citations omitted; internal quotation marks omitted).
Morascini v. Commissioner of Public Safety, 236 Conn. 781, 789,675 A.2d 1340 (1996). Courts construing a statute will make every presumption and intendment in favor of its validity. (citation omitted; internal quotation marks omitted). Blue Sky Bar, Inc.v. Stratford, 203 Conn. 14, 23, 523 A.2d 467 (1987). Courts exercise their power to declare a statute unconstitutional "with caution and in no doubtful case." (citation omitted; internal quotation marks omitted). Fair Cadillac-Oldsmobile IsuzuPartnership v. Bailey, 229 Conn. 312, 316, 640 A.2d 101 (1994).
Where a statute is challenged for vagueness, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute. (citation omitted) Bottone v. Westport, 209 Conn. 652, 658,553 A.2d 576 (1989). The fact that the meaning of the language is fairly debatable is not enough to satisfy the burden of proof. Id. The burden is even higher where, as here, the challenged statute is civil and not criminal:
 in a vagueness challenge, . . . civil statutes can be less specific than criminal statutes and still pass constitutional muster. Id.
Finally, "[a]s a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts in issue." (citation omitted). State v. Pickering, 180 Conn. 54, CT Page 1189 57, 428 A.2d 322 (1980). The only exception to this general rule is when the statute intrudes on fundamental constitutional guarantees, particularly first amendment freedoms. Id.
Connecticut General Statutes 10-233d provides the basis for expelling a student by a local school board. "Any local or regional board of education may expel,[1] subject to the provisions of this subsection any pupil . . . whose conduct off school groundsis violative [of a publicized policy of such board] and isseriously disruptive of the educational process . . . [emphasis added]" Purportedly, in accordance with the state, the defendant school board in its finding of fact concluded:
"3. The student possessed marijuana off school grounds. . . .
"4. The student possessed 2 ounces of marijuana off school grounds. . . .
"7. The student's actions off school grounds were seriously disruptive of the educational process."
The statute in question lays out no standards as to the phrase "seriously disruptive of the educational process" nor in the statutes is there a definition provided. In fact, no such explanation exists in the purported policies of the defendant school board. It thus leaves the statute to be interpreted by the school administration in any manner they deem appropriate. A reading of the transcript reveals that the superintendent of the school system and school officials decide, on a case by case basis, which cases to present to the board of education and which cases not to present without any rational, ascertainable standards. (See page 20 of the October 8, 1997 transcript of the hearing of the Board of Education. See also Testimony of the School Principal, page 8 of said transcript.) Further, upon exhaustive questioning of the school principal by Attorney Seaborne at the October 8, 1997 Board of Education hearing, it is clear that the action of the school administrators was arbitrary and without standards. (See page 17 and 18 of the transcript of the October 8, 1997 transcript of the hearing of the Board of Education. See also Testimony of the School Principal, page 8 of said transcript.) Further, upon exhaustive questioning of the school principal by Attorney Seaborne at the October 8, 1997 Board of Education hearing, it is clear that the action of the school administrators was arbitrary and without standards. (See page 17 and 18 of the transcript of the October 8, 1997 hearing.) CT Page 1190
Staff Findings and Recommendations regarding Student's Suspension and Expulsion dated November 25, 1997 prepared by the Legislature Program Review Investigations Committee of the Connecticut General Assembly discusses the language "seriously disruptive of the educational process."
 School districts have found this language to be ambiguous and difficult to apply consistently or uniformly to schools within a single district and statewide among all districts. The committee staff found different examples of `seriously disruptive of the educational process' within each of the districts and schools. Some school-districts are strict and anything that interrupts the learning process then may be grounds for discipline, while others take a more narrow approach and focus on the safety to students and danger posed by a particular student.
Page 39 of the Staff Findings is noted as follows:
 . . .recently, school districts' authority to discipline students for misconduct was expanded to include off campus behavior. The intent of the change was to allow school administrators to deal with students involved in inherently dangerous activity off school grounds that resulted in an on campus safety issue to other students, staff, and school property. This change was part of the `get tough' initiative aimed at juvenile violence and delinquency. The rationale for the change was an increase in the incidents and severity of juvenile violence in the community was filtering onto school campuses.
 Under Connecticut law, to exclude a student from school for off campus behavior, the school district must find that behavior meets a two-pronged test. The misconduct must be: (1) `seriously disruptive of the educational process' and, (2) a violation of school policy or regulation. For misconduct occurring on CT Page 1191 school grounds, a school district can suspend or expel a student if the behavior is either a violation of school policy, dangerous to persons or property, or `is seriously disruptive of the educational process'. On campus conduct must meet only one standard. As a matter of public policy, the different standards were established to ensure students were not suspended or expelled for off campus conduct that had nothing to do with school.
The Program Review Committee went on to find and conclude, on page forty of the study, that the existing standard to determine grounds for suspension and expulsion for off campus student conduct:
 provides little direction to public school districts in the implementation of the law and policy, the language is vague and does not clearly focus on the issue of school safety; the Connecticut General Assembly has two options to clarify the current statutory standard by which off campus conduct is determined to be grounds for suspension or expulsion; (1) amend the language of law; or (2) require the state Department of Education to issue regulations or memoranda defining the standard and establishing criteria.
The key points on page four, which are conclusions of the staff findings and recommendations, are that the committee concluded as follows: "statutory grounds for suspension, and expulsion for off campus conduct provide little direction and do not focus on school safety."
The Legislative Committee has determined that the present statute (C.G.S. 10-233d) is vague and being dealt with unevenly on a statewide basis, with no rational relationship to a legitimate state interest, and thus, unconstitutionally vague.
What renders a statute unconstitutionally vague can take on a number of aspects. First, a statute by being vague can trick the unwary by not providing fair warning. State v. Indrisano,228 Conn. 795, 802, 640 A.2d 986 (1994). An unconstitutionally vague statute may inhibit free speech by forcing citizens to studiously CT Page 1192 avoid certain speech. More on point, it has been held that:
 . . . If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. Grayned v. Rockford, supra, 108-109. Therefore, "a legislature [must] establish minimal guidelines to govern law enforcement." (Internal quotation marks omitted.) Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); see also Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 591, 590 A.2d 447
(1991).
The Indrisano case was used to declare the disorderly conduct statute C.G.S. Section 53a-182, unconstitutional in part and leave a way to allow the court to render the law constitutional in the future by the court putting a certain gloss on the statute. It is clear that the present statute delegates to the school administrators basic policy decisions but, on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. No standards are set out in the statute by the legislature and no guidelines exist either in state law or a local policy.
Webster's Third New International Dictionary defines disrupt as "to throw into disorder or turmoil; to interrupt to the extent of stopping, preventing normal continuances of or destroying." No reasonable interpretation of the facts in this case could put a person on notice that possession of marijuana in the trunk of his car would result in the disruption of a school's educational process. To interpret the statute in such a manner would be violative of constitutional principles.
Attention is directed to General Statutes § 10-233c(a) which provides in part "any . . . board of education may authorize the administration of the schools . . . to suspend[2] from school privileges any pupil . . . whose conduct off school grounds is seriously disruptive of the educational process." This statute CT Page 1193 tracks word for word section 10-233d(a) which provides for expulsion. In neither statute are there any standards or guidance when expulsion rather than suspension is appropriate.
There being no standards in General Statute § 10-233d(a), the court finds it to be unconstitutional and therefore null and void.State v. Indrisano, 228 Conn. 795, 640 A.2d 986 (1994).
The transgressions of the minor plaintiff has publicly and legally been adjudicated in the criminal side of the superior court where he has been granted a community service labor program. This will result in a dismissal of the charge as of May 14, 1998 if he plaintiff has redress from administrative action even in instances in which no constitutional due process right exists.
The plaintiff had a statutory right to the meaningful presentation of evidence at the expulsion hearing. Upon a review of the record, it is clear that the evidence submitted by the defendant failed to support its action. General Statutes § 10-233d(3) provides that "[u]nless an emergency exists, no pupil shall be expelled without a formal hearing held pursuant to sections 4-176e to 4-180a, inclusive, and section 4-181a . . ." At the hearing of a contested case, a party is entitled "to respond, to cross-examine other parties, intervenors, and witnesses, and to present evidence and argument on all issues involved." General Statutes § 4-177c. Similarly, a party may "conduct cross-examinations required for a full and true disclosure of the facts. General Statutes § 4-178. Cross examination is an indispensable means of eliciting facts that may show motive, bias, interest or prejudice. State v. Fullwood, 199 Conn. 281, 286, 507 A.2d 85
(1986). Regarding cross-examination, our courts have held that "[i]t is a substantial legal right which may not be abrogated at the discretion of the trial court." Pickman v. Pickman,6 Conn. App. 271, 277-78, 505 A.2d 4 (1986).
In this case the evidence was so lacking such that the defendant violated its rights pursuant to General Statutes § 10-233d
by preventing a meaningful right to cross examine. That is, while the plaintiff had a right to question witnesses, it is apparent from the transcript that the substance of the testimony provided complies with court orders. Any punishment arising out of this incident properly rests with that court. Any punishment by the defendant board is beyond its power and would be a violation of the plaintiff's constitutional right to a public education. See Hortonv. Meskill, 172 Conn. 615, 376 A.2d 359 (1977); Sheff v. O'Neill, CT Page 1194238 Conn. 1, 678 A.2d 1267 (1996).
 II
The plaintiff may appeal Connecticut General Statutes § 10-233d
expulsion on the grounds that it violated plaintiff's state and federal procedural and substantive due process rights. SeeBartholomew v. Hamden Board of Ed. 1996 WL 580964, at *1 Conn. Sup. Ct. (Sept. 27, 1996 (Dorsey, J.). In Bartholomew,supra, addressing a local board of education's power to expel, the court stated, "it should not be applied in an arbitrary or oppressive fashion or as a pretext for cloaking a policy unauthorized by law or unpublicized to either parents or students." Bartholomew, 1996 WL 580964, at *2.
The Supreme Court has held that "[a]lthough no constitutional due process right exists . . ., we have recognized a common-law right to fundamental fairness in administrative hearings." Grimesv. Conservation Commission of Litchfield, 243 Conn. 266. ___ A.2d ___ (1997). "`The only requirement [in administrative proceedings] is that the conduct of the hearing shall not violate the fundamentals of natural justice.'" Grimes, 1997 WL 735456 at *3 quoting Miklus v. Zoning Board of Appeals, 154 Conn. 399, 406,225 A.2d 637 (1967). Necessarily, then, Connecticut recognizes that a never touched upon the issue of the alleged disruption of the educational process despite the plaintiff's efforts to inquire just how the conduct disrupted the educational process. Although proceedings before administrative agencies are informal and not subject to the exactitude of the rules of evidence, "they cannot be so conducted as to violate the fundamental rules of natural justice." Pizzola v. Planning and Zoning Commission of Plainville,167 Conn. 202, 207, 355 A.2d 21 (1974). "Due process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Pizzola, supra167 Conn. at 207; see Silver v. Commissioner of Motor Vehicles, No. CV 96-0562503, 1997 WL 35800 at 2-3, Conn. Sup. Ct (Jan. 23, 1997, Maloney, J.).
A review of the transcript of the hearing reveals little if anything, but hearsay, innuendo and suspicion. In addition, although the notice was specifically limited to "your son Kyle . . . having drug paraphernalia in his car," the testimony included past connections with alcohol, and drug use regarding basketball players resulting in a game forfeiture. There is no testimony CT Page 1195 regarding disruption of the educational process except that some teachers talked about the arrest. Even were the statute to pass constitutional muster, there is no evidence in this record to support the board's action.
For the reasons stated, the temporary injunction issued on November 5, 1997 is continued until further order of court.
HON. WALTER M. PICKETT, JR. State Judge Referee