[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR APPROVAL OF EDUCATION TRUST (DOCKET ENTRY NO. 139.00)
On November 25, 1997, this court (Kavanewsky, J.) appointed Attorney Thomas J. Drew to draft and supervise the execution and funding of the Education Trust provided for in paragraph 15 of the separation and support agreement entered into by the parties on April 20, 1988, which separation and support agreement was incorporated into the judgment entered on February 8, 1989. Pursuant to this court's directive, Attorney Drew has met with the parties and their counsel and has drafted the Gary S. Nelson Education Trust, which has been submitted to the court and marked "Court Exhibit 1."
The plaintiff objects to three provisions of the trust agreement as follows:
1. The definition of "Education Expenses" as set forth in Article II B., more specifically to the provision regarding a "laptop computer." The trust agreement provides as follows: "[a] laptop computer if formally required by the academic institution or reasonably required." It is the plaintiff's position that today a laptop computer is a necessary education expense.
2. "Education Expenses" in Article IIB is defined as "a four year undergraduate college or university education (or other technical or other training provided a bachelor's degree had not yet been achieved by such beneficiary)." It is the plaintiff's position that the term should include all post high school education expenses until the child reaches CT Page 7961 twenty-five years, thus including post graduate work.
3. Article IIC "Contribution Ceiling Calculation." It is the plaintiff's position that there should be no such provision since paragraph 15 of the separation and support agreement had no such provision.
On the assumption that "college or post high school education" was ambiguous, the court permitted testimony of the attorneys formerly representing the parties and the parties regarding the parties' intent at the time of the April, 1988 agreement. The plaintiff and her attorney testified that plaintiff's intent was for all post high school education to be included, including graduate education to age twenty-five. The defendant and his attorney testified that defendant's intent was for that education necessary leading to a bachelor's degree, but not including graduate school.
In reaching a decision on this issue, the court is influenced by the following factors:
1. The language of the trust agreement has been carefully drafted by court appointed counsel after meeting with the parties and their attorneys. He was appointed by the court for the very reason that the parties have been unable to agree on the specific terms and provisions.
2. The language used "college or post high school education" be accorded its common, natural and ordinary meaning. Webster's Dictionarydefines college as follows: "An institution of higher learning typically accepting students who have completed secondary education, offering humanitarian as well as professional courses and granting bachelor's and sometimes more advanced degrees." Black's Law Dictionary, Sixth Edition, defines college as follows:
 In the most common use of the term, it designates an institution of learning which offers instruction in the liberal arts and humanities and in scientific branches, but not in the technical arts or those studies preparatory to admission to the professions. Also applied to all kinds of institutions from universities, or departments thereof, to include "business colleges", "barber colleges", etc., that have degree-conferring power.
CT Page 7962
In the case of Bernard v. Bernard, 214 Conn. 99,111 (1990), the use of the word "college" was construed to refer to "a standard four year college education." And so, too, in a series of cases, the use of the term college has, without debate, inferred a standard four year college program. See Lavignev. Lavigne, 3 Conn. App. 423 (1985); Pickman v.Pickman, 6 Conn. App. 271 (1986); Cattaneo v.Cattaneo, 19 Conn. App. (1989). The court adopts what it considers to be the common and accepted meaning and that is a standard four year college program not including post graduate schooling.
Assuming, arguendo, that the language of the agreement is ambiguous, the court accepts the testimony of the defendant and Attorney Rafsky that the parties intended that the language not include post graduate education, but only that education leading to a bachelor's degree or post secondary education.
As to the issue of a contribution ceiling, the court agrees with Attorney Drew that it is quite conceivable for the trust to be over funded. This would be pointless and would needlessly restrict the defendant in the use of his funds. Attorney Drew has provided for contribution in the event the trust needed additional funds since the contribution is simply deferred and not excused. (See second full paragraph of the trust agreement on page 4.)
The trust agreement as drafted by Attorney Drew is approved in its entirety except that the date of July 15 as contained in Article IIIA shall be amended to read July 31, 1998, and the date of August 15, 1998, shall be amended to read August 31, 1998. The parties are ordered to execute the trust agreement in its present form. As ordered by Judge Kavanewsky, Attorney Drew shall supervise the execution of the Gary S. Nelson Trust Agreement and the funding of the Gary S. Nelson Trust, all in accordance with Judge Kavanewsky's order of November 25, 1997.
The court has been asked to rule with regard to the allocation of the fees of Attorney Drew. As has been argued, this has already been decided by Judge Kavanewsky in his Memorandum of Decision dated November 25, 1997. Attorney Drew's fees shall be allocated between the parties according to their respective financial abilities. Financial affidavits have been filed by the parties. While it is not reflected in the plaintiff's financial affidavit, she is receiving $1500 per month upon an arrearage as CT Page 7963 originally determined in the amount of $22,500. (See memorandum of July 30, 1997, Bassick, J., docket entry no. 133). Six thousand dollars of this arrearage remains to be paid, payable at the rate of $1500 per month. See memorandum of November 25, 1997, Kavanewsky, J., docket entry no. 137). If one considers the amount of $4,550 ($3,050 plus $1500) to be paid to the plaintiff each month and subtracts this amount from the defendant's earnings, one has a figure of $4,550 for the plaintiff and $8,200 for the defendant, very roughly one to two. The court has also considered the net worth of each of the parties. Including the receivable of $6,000 in the plaintiff's total net worth, plaintiff's net worth is $293,500. The defendant's net worth, less the funds to be paid over to the trust, is $341,000.
Having considered the respective financial abilities of the parties, the court orders that the plaintiff should pay one-third of Attorney Drew's fees and the defendant should pay two-thirds of Attorney Drew's fees, which fees are to be paid within whatever time is set by Attorney Drew upon the rendering of his statement.
Docket entry number 139.00 is granted in accordance with this memorandum of decision.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE