[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTUAL BACKGROUND:
The plaintiff, Kyle Packer, is a minor acting through his mother, Jane Packer, as parent and next of friend. The genesis of his complaint is the defendant's decision to expel him from high school from October 8, 1997, to January 23, 1998, and, upon being reinstated, to prohibit him from engaging in any extracurricular activities for the remainder of that school year. The expulsion was as a result of the plaintiff's arrest off school grounds on the misdemeanor charges of possession of approximately two (2) ounces of marijuana and possession of drug paraphernalia. It was CT Page 16587 the result of a hearing held pursuant to Connecticut General Statute § 10-233d which provided in pertinent party that a student may be expelled if the "conduct off school grounds is violative [of a publicized policy of the school board] and is seriously disruptive of the educational process. . . ."
After a hearing on an ex-parte application for temporary injunction before Pickett, J., the court found Connecticut General Statute § 10-233d to be unconstitutional and therefore null and void. It ordered the defendant reinstate the plaintiff to Thomaston High School as a full-time student. At a further hearing on the plaintiffs motion to clarify whether the order included extra-curricular activities, the court ordered the plaintiff be afforded full rights and privileges — including but not limited to participation in athletics, athletic events, and any and all extra-curricular activities. On certification, this state's supreme court concluded that, while the statute was not facially invalid, the school board had so applied the statute as to provide the plaintiff inadequate notice of the kind of behavior which was "seriously disruptive of the educational process.
By Revised Amended Complaint dated September 24, 1999, the plaintiff asserts one count seeking an injunction and one count seeking damages based on the defendant's decision to expel. The First Count, which seeks injunctive relief, is now moot since the plaintiff has graduated from Thomaston High School and since no ruling can now have any effect either on the defendant's determination to expel or on the prior rulings of either the trial court or this state's highest court. Despite the plaintiffs argument to the contrary in his brief, at argument, counsel for the plaintiff conceded that count was moot since the defendant cannot be ordered to reinstate a graduated student.
The defendant now moves to strike the second count on the grounds it fails to state a claim for damages under either the Connecticut or United States Constitutions and, further, the Revised Amended Complaint fails to allege any damages this court can award. The plaintiff asserts a cause of action for damages under article first, § 10 of the state constitution and thefourteenth amendment of the federal constitution.
LEGAL STANDARD:
The motion to strike is used to test the legal sufficiency of CT Page 16588 a pleading. RK Constructors, Inc. v. Fusco Corp. , 231 Conn. 381,384 (1994). For the purpose of a motion to strike, the moving party admits all facts well pleaded. Ferryman v. Groton,212 Conn. 138, 142 (1989). The court must construe the facts in the complaint most favorably to the plaintiff. Faulkner v. UnitedTechnologies Corp. , 240 Conn. 576, 580 (1997). The court is limited to the facts alleged in the complaint. Waters v. Autuori,236 Conn. 820, 825-26 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (internal citation omitted) Pamela B. v. Ment, 244 Conn. 296. 308 (1998).
APPLICATION OF LAW TO FACTS:
The plaintiff rests his state constitutional claim for damages on article first, § 10 of the Connecticut constitution. Such article provides:
 All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.
The plaintiff cites as support for his state claim for damagesMoore v. Ganim, 233 Conn. 227 (1995). In Moore, three (3) recipients of general assistance had been notified their benefits were to be terminated under a state statute which limited such assistance to only nine (9) out of twelve (12) months. Of interest to this case is that the plaintiffs there asserted no claim for damages but sought instead declaratory and injunctive relief. Regarding their claim this state statute was unconstitutional under article first, § 10 of the state constitution because it deprived them of their right to compel the state to provide aid to needy persons and that it abrogated an unenumerated constitutional obligation of the state, the Court found the plaintiffs: a) failed to sustain their burden to establish that, prior to the enactment of our state constitution, citizens had a right to compel the state to provide those in need a level of minimal subsistence but instead left that matter to our legislature; and b) failed to prove there was an unenumerated constitutional obligation to provide the assistance in question. The Court interpreted article first, § 10 as a provision protecting access to state courts, a provision "which does not itself create new substantive rights." Id, at 573. While the CT Page 16589 Court concluded the legislature could not abolish or substantially modify any such right redress able in court as of 1818 without enacting a reasonable alternative to the enforcement of that right, Moore provides no authority for this plaintiffs claim for damages under article first, § 10. The "constitutional right to a remedy for all cognizable injuries does not delegate to the courts the legislative authority to create new rights under the law." Moore, supra, at 573, citing Doe v. State,216 Conn. 85, 104 (1990).
The plaintiffs bear the heavy, burden of establishing "redress [was] available for the type of injury at issue . . . prior to 1818." Moore, supra, at 575, citing Sanzone v. Board ofPolice Commissioners, 219 Conn. 198-99. Our Supreme Court has firmly held it would not recognize a constitutionally incorporated right absent a "clear indication" in this state's history that such a right existed at common law. See, e.g.,Kelley Property Development, Inc. v. Lebanon, 226 Conn. 314, 333
(1993). The plaintiff before the court has failed both to prove that, pre 1818, a common law right of action for damages existed for the temporary deprivation of a public school education and that there is an unenumerated constitutional obligation to do so. Although Connecticut has a long history of commitment of education for all children, no authority cited by the plaintiff supports the availability of the remedy sought herein and this court is presented no evidence an analysis of the factors suggested by the Court in Moore[1], supra, would result in an affirmative governmental obligation based on our state constitution.[2]
The second count fails to state a claim under the Connecticut constitution.
The plaintiff claims the defendant violated his right to due process under the fourteenth amendment to the United States Constitution in that Connecticut General Statute § 10-233d is unconstitutionally vague and that the expulsion was violative of both article 1, § 10 of this state's constitution, Connecticut General Statute § 10-233d, and the Fourteenth Amendment of the United States Constitution because: (1) the hearing prior to expulsion was conducted without probative evidence as to the allegation the plaintiffs behavior was "seriously disruptive of the educational process "as required by Connecticut General Statute § 10-233d; (2) the defendant's decision was arbitrary and capricious and also violated the equal protection clause of the CT Page 16590 federal constitution in that similarly situated students had not been expelled and, in at least one such case, the board took no action; General Statutes § and (3) that the plaintiff did not violate the was publicized and disseminated and, thus, the plaintiff was not on notice as to that policy.
As above stated, the superior court (Pickett, J.) entered a temporary injunction and, in memoranda of decisions dated January 9, 1998, and January 21, 1998, found that portion of Connecticut General Statute § 10-233d (a)(1) which, in relevant part, permitted the expulsion of a pupil "whose conduct off school grounds is violative of [a publicized policy of the board] and is seriously disruptive of the educational process" was unconstitutionally vague and therefore null and void. The court also determined the hearing process was violative of due process because the Board had denied the student "a meaningful right to cross examine" and that the record of the expulsion hearing contained "no evidence . . . to support the board's action." Although on certification our Supreme Court found the statute in question not to be facially invalid, it found the school board's application of the statute provided inadequate notice of the kind of behavior "seriously disruptive of the educational process."
Regarding the plaintiffs state constitutional claim, our Supreme Court has said that, in the absence of a clear indication in state judicial precedent that earlier damage awards had redressed rights akin to fundamental constitutional rights, "we decline to read these cases as establishing a common law precedent for the existence of a constitutional claim for damages for any and all alleged misconduct by state or local governmental officers." Kelley Property Development, Inc. v. Lebanon,226 Conn. 314, 333 (1993). That Court concluded the plaintiff had failed to establish a damages action for the violation of a quasi-constitutional right existed in this state's common law prior to 1818 and thereby became incorporated into the state constitution by virtue of article first, § 10. This claim of the plaintiff has above been considered and rejected.
Regarding the federal constitutional claim, the defendant's position is that the only source of fourteenth amendment damages is found in Bivens v. Six Unknown Named Agents of Federal Bureauof Narcotics, 403 U.S. 388 (1971), and that Bivens is not applicable to the instant case because it requires there be no other remedy available before a damages remedy is created. The defendant concludes, since this plaintiff received injunctive CT Page 16591 relief and was reinstated as a student, no basis exists for the creation of a damages remedy. At issue in Bivens was whether a plaintiff who alleged federal agents, acting without a warrant and without probable cause, could recover for humiliation and mental suffering he sustained as a result of the agents' entry and search of his apartment, for the use of unreasonable force in effecting the arrest, for his subsequent interrogation, and for subjecting him to a visual strip search. The Court held a violation of the fourth amendment's command against unreasonable searches and seizures by a federal agent acting under color of federal authority gave rise to a federal cause of action for damages. Bivens, supra, at 627.
Our Supreme Court in Kelley, supra, offered a careful analysis of Bivens, supra, and its progeny. Until 1980, the court considered several factors to be significant in determining whether to create a damages remedy for alleged federal constitutional violations. Those factors included: (1) the inadequacy or absence of an alternative remedy; (2) the absence of explicit direction from Congress that no damages remedy should lie; and (3) the absence of any special factors counselling hesitation, such as federal fiscal policy. See Bivens, supra;Carlson v. Green, 446 U.S. 14 (1980), Davis v. Passman,442 U.S. 228 (1979). Thereafter, the United States Supreme Court has appeared to require a plaintiff to establish the lack of any remedy if a damages remedy were not created. See, e.g., Bush v.Lucas, 462 U.S. 367 (1983), Chappell v. Wallace, 462 U.S. 296
(1983). The Kelley court concluded that, as a general matter, our state constitution should not be construed to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a "reasonably adequate statutory remedy." 226 Conn. 314, 339. Those cases, however, involved significantly different considerations and the creation of a damages remedy there invoked — in fact could be viewed as being violative of — such time honored traditions as federalism and comity, considerations not present in the instant case. InChappell, supra, the Court's refusal to allow enlisted military personnel a damages action for alleged violations of their equal protection rights by federal military officers was premised on "special factors [that counsel] hesitation," such as the military's unique discipline based structure, the constitution's delegation to Congress of plenary authority over the military, and Congress' establishment of complaint and grievance procedures within the military structure. Chappell v. Wallace, supra, 302-04. In Bush v. Lucas, 462 U.S. 367 (1983), the court rejected CT Page 16592 the damages claim of an aerospace engineer whose claim it was that his supervisors violated his first amendment rights by demoting him after making a number of public statements that were critical of his employment. It determined the ultimate question in that case was appropriately characterized as one of "federal personnel policy." Id. At 380. The court noted federal civil servants were protected by an elaborate, comprehensive scheme that encompassed substantive provisions forbidding arbitrary action by supervisors and procedures — administrative and judicial — by which improper action may be redressed.462 U.S. 367, at 385. "They apply to a multitude of personnel decisions that are daily made by federal agencies. Constitutional challenges to agency action . . . are fully cognizable within this system . . . . "[T]he Government's comprehensive scheme is costly to administer, but it provides meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies." Id. at 385-86. "[W]e are convinced that Congress is in a better position to decide whether or not the public interest would be served" by creating it." Id. at 390. In the words of Justice Marshall, with whom Justice Blackmun joined, concurring, "the question is whether an alternative remedy should be provided when the wrong may already be redressed under an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." Id. at 392.
While there is in the instant case a statute which provides for various levels of discipline when there has been behavior "seriously disruptive of the educational process," nowhere does the statute provide a definition of that phrase. Nor is there here suggested this defendant has ever published a board policy stating off-site student possession of illegal drugs and/or drug paraphernalia endangered school students or personnel and would therefore be considered seriously disruptive of the educational process. While the statute provided for a hearing prior to expulsion, the record supports a finding the hearing in this instance was less than meaningful in that, as found by an earlier court, this plaintiff was not afforded a full opportunity to cross-examine witnesses. The right to cross-examine and to present evidence and argument on all issues involved is afforded by Connecticut General Statute § 4-177c. Cross examination is an indispensable means of eliciting facts that may show motive, bias, interest or prejudice. State v. Fullwood, 199 Conn. 281,286 (1986). It is a substantial legal right which may not be abrogated at the discretion of the trial court. Pickman v.CT Page 16593Pickman, 6 Conn. App. 271, 277-78 (1986). cannot be so conducted as to violate the fundamental rules of natural justice. Pizzolav. Planning and Zoning Commission of Plainville, 167 Conn. 202,207 (1974). "Due process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Id. Our Supreme Court has held that "[a]lthough no constitutional due process right exists . . ., we have recognized a common-law right to fundamental fairness in administrative hearings." Grimes v. Conservation Commission ofLitchfield, 243 Conn. 266, 273 (1997). "The only requirement [in administrative proceedings] is that the conduct of the hearing shall not violate the fundamentals of natural justice" Id., citing Miklus v. Zoning Board of Appeals, 154 Conn. 399, 406
(1967). This state thus recognizes a plaintiff has redress from administrative action even in instances in which no constitutional due process right exists.
This court rejects the conclusion of Bush, supra, andChappell, supra, in that there are not here the special circumstances there present nor is there here the same elaborate, comprehensive scheme encompassing substantive provisions by which improper action may be redressed. If there is an inadequate alternative remedy, no explicit direction from Congress that no damages remedy should lie, and no special factors counselling hesitation, a Bivens, supra, remedy for damages is appropriate. Those requirements are here met. While the injuncitve relief earlier afforded returned the plaintiff to school and permitted his resumption of extracurricular activities, it provided no remedy to address such injuries as were claimed at argument and as may be proven at trial — specifically, the humiliation and embarrassment caused by the expulsion, the damage to personal reputation, and the lobs of consortium afforded by the temporary deprivation of attending school with peers in the environment to which he had become accustomed and the temporary denial of participation in extra-curricular activities. The availability — or lack thereof — of recompense for legal fees incurred in defending at the expulsion hearing and/or in prosecuting this plaintiffs civil rights in the judicial forum are not determinative of the issue whether, under these circumstances, a damages remedy should lie and is for another court to determine. In this state, a plaintiff is liberally permitted to amend his complaint and this plaintiff shall have the same opportunity to amend so as to include the request for such compensatory damages as were argued before this court and CT Page 16594 may be inferred from a fair reading of the allegations of the present complaint.
CONCLUSION:
No damages remedy lies under article first, § 10 of this state's constitution and the defendant's motion to strike as regards that claim is granted. The defendant's motion to strike the claim for damages under the fourteenth amendment of the federal constitution is denied and the plaintiff shall re-plead accordingly.
Sheedy, J.